Filed 4/10/15  In re S.A. CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re S.A., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. B.A., Defendant and Appellant. | E061583 (Super.Ct.No. J253275) OPINION |
| In re S.A., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. K.D., Defendant and Appellant. | E061906 |
| In re S.A., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. B.A. et al., Defendants and Appellants. | E062123 |

1

APPEAL from the Superior Court of San Bernardino County. Lily L. Sinfield and Lynn M. Poncin, Judges. Affirmed.

Grace Clark, under appointment by the Court of Appeal, for Defendant and Appellant B.A.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant R.C.

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant K.D.

Jean-Rene Basle, County Counsel, Dawn M. Messer, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

In these appeals,[1] the biological parents of S.A. and his paternal grandmother challenge various orders of the juvenile court. In case Nos. E061583 and E061906, father contends the juvenile court abused its discretion by denying father's petition under Welfare and Institutions Code[2] section 388, without conducting an evidentiary hearing on father's request that S.A. be placed in his custody, and both father and paternal

---

[1] By order dated November 3, 2014, we consolidated the appeals in case Nos. E061583 and E061906. On March 10, 2015, we consolidated the appeal in E062123 with the other two cases. The appeals were consolidated for purposes of briefing, oral argument and decision only. Case No. E061583 is designated the master file.

[2] Unless otherwise indicated, all undesignated statutory references are to the Welfare and Institutions Code.

grandmother contend the county social worker did not assess paternal grandmother for placement and the juvenile court erred by not applying the relative placement preference found in section 361.3. Finally, in case No. E062123, mother (joined by father) challenges the order terminating her parental rights to S.A. on the ground she was not transported from state prison for the Welfare and Institutions Code section 366.26 hearing, in violation of her rights under Penal Code section 2625.

We conclude the juvenile court did not abuse its discretion by denying father's modification petition. Although father made a prima facie showing of changed circumstances, he did not show that placing S.A. in father's or paternal grandmother's custody would be in S.A.'s best interest. With respect to paternal grandmother, we conclude paternal grandmother was properly assessed and the juvenile court was not required to apply the relative placement preference. Also, even if the juvenile court erred, the error was harmless because father and paternal grandmother did not show that the placement of S.A. with grandmother was in S.A.'s best interest. Finally, although mother had a statutory right to be present at the section 366.26 hearing, termination of mother's parental rights in her absence was harmless because mother's testimony at the hearing would not have changed the result.

# I.

## FACTS AND PROCEDURAL BACKGROUND

*Detention*

While in pretrial detention in county jail, mother was transported to a local hospital and gave birth to S.A. Two days later, San Bernardino County Children and Family Services (CFS) received a referral from the hospital alleging mother's incapacity to care for S.A. because mother had been returned to county jail and signed an authorization to release the child to CFS. It was also reported that father's whereabouts were unknown. The reporting party told a social worker with CFS that mother agreed to release S.A. to CFS or to S.A.'s paternal grandmother, but the form she signed only authorized his release to CFS. The reporting party also said that, when first contacted, paternal grandmother indicated she did not want to take S.A. but, later,[3] changed her mind and called to say she did want to take the child. Father had also called the hospital requesting that S.A. be released to him, but his request was denied because mother had only authorized release to CFS

When interviewed over the telephone, paternal grandmother admitted she initially told someone at the hospital that she did not want S.A., but then changed her mind after she learned S.A. was named a "Jr." Paternal grandmother denied having a criminal record, but reported that her children were taken from her and later returned to her after

---

[3] The reporting party indicated that paternal grandmother called back "a few hours later," but paternal grandmother told the social worker that she called back "about an hour and a half later."

4

she went to "rehab." The social worker tried unsuccessfully to contact father using the telephone number given to her by the reporting party. Paternal grandmother told the social worker she had no way of contacting father other than going to the home of father's other child or looking for him on the streets, that father calls her using different telephone numbers each time, and that he was somewhere in Barstow. After conducting a risk assessment meeting, CFS concluded S.A. had no appropriate caregiver, and the child was placed in the custody of a foster family.

CFS filed a petition alleging S.A. was a dependent child under section 300, subdivisions (b), (g), and (j). CFS recommended that S.A. be removed from mother's custody and placed in a foster home. Mother did not appear at the detention hearing, so the juvenile court continued the hearing and ordered that mother be transported from county jail. Mother appeared at the continued detention hearing, entered a denial of the allegations, and submitted on the issue of detention. The juvenile court adopted CFS's recommendations, ordered that S.A. be detained in the custody of CFS, and ordered that mother by transported for the jurisdictional and dispositional hearing.

*Jurisdictional and Dispositional Hearing*

In a report prepared for the jurisdictional hearing, CFS reported that father's whereabouts were still unknown. CFS also reported that while paternal grandmother was in the process of being assessed for relative placement, she called CFS "stating she no longer wanted placement and she would be unable to care for [S.A.]" CFS recommended that S.A.'s placement with the foster family be continued, that the juvenile court declare S.A. to be a dependent, and that the juvenile court set a hearing pursuant to section

5

366.26 to determine a permanent plan for S.A. with the goal of adoption. Mother did not appear for the jurisdictional hearing because she had been transferred from local custody to state prison, so the juvenile court continued the hearing. Mother did not appear at the continued jurisdictional hearing, and the juvenile court once again ordered that she be transported. The juvenile court also granted a request from counsel for CFS that the minutes of mother's criminal case and prison sentence be attached to its dispositional report.

Mother appeared for the continued jurisdictional hearing. Her attorney objected to the allegations in the petition, but offered no affirmative evidence. Counsel also asked the court to consider relative placement with mother's cousin. The juvenile court declared S.A. to be a dependent of the court, ordered him removed from mother and to remain in the care of his foster family, ordered that mother receive no family reunification services, set a hearing pursuant to section 366.26 to determine a permanent plan, and directed CFS to conduct an adoption assessment. The juvenile court stated on the record that mother would be transported for the hearing.

*Father's Section 388 Petition*

Father made an appearance in this dependency case after the jurisdictional hearing and filed a modification petition under section 388. Father did not indicate which order of the juvenile court he wanted modified, but informed the juvenile court that he was almost certain S.A. was his biological son and that he wanted S.A. to be placed in his custody. The juvenile court set the petition for a nonevidentiary hearing and authorized CFS to conduct paternity testing. In a report prepared for the hearing on father's petition,

CFS reported that, if a paternity test established that S.A. was father's son, father requested the child be placed with paternal grandmother. Father did not request family reunification services, and CFS recommended that, until paternity testing was completed, father remain the alleged father. At the hearing on father's petition, father's attorney denied the allegations in the section 300 petition, submitted on the detention order, and requested that paternal grandmother be assessed for placement if the paternity test established S.A. was father's biological son. The court continued the hearing until the result of the paternity test was received. The test result subsequently came back positive.

At the continued hearing, father's attorney explained to the juvenile court that father's petition did not ask that S.A. be placed in father's custody, but instead was "a plea" to have the child placed with paternal grandmother. Counsel acknowledged that paternal grandmother initially declined to take S.A. because she was caring for a sick relative, but informed the court that paternal grandmother was now willing and able to care for S.A. Although S.A. had been living in his foster home since his detention and had never lived with father's family, counsel argued that placing S.A. with paternal grandmother would be in his best interest.

The court noted that counsel's strongest point in support of the petition was that father was shown to be the biological father, but stated it was inclined to deny an evidentiary hearing on the issue of placing S.A. with paternal grandmother because counsel had not addressed whether such placement would be in S.A's best interest. Counsel responded that placement with paternal grandmother would provide S.A. with the "real benefit" of being raised by his biological family. When the juvenile court

7

indicated that father had not requested placement with paternal grandmother in his written petition, counsel told the court father was willing and able to have S.A. placed with him. After hearing from counsel for CFS and from counsel appointed for S.A., the juvenile court found that, although father had made a prima facie showing of changed circumstances based on the result of the paternity test, he had not made a prima facie showing that a new placement for S.A. would be in the child's best interest. Therefore, the juvenile court denied the petition. Father timely appealed.[4]

*Paternal Grandmother's Section 388 Petition*

Paternal grandmother filed her own section 388 petition seeking an order placing S.A. in her custody, and the juvenile court set a nonevidentiary hearing. At the hearing on her petition, paternal grandmother informed the juvenile court that she loved S.A. and believed S.A. should be placed with her. Father's counsel argued in favor of the petition, informing the juvenile court paternal grandmother had been assessed for placement and was found suitable. Counsel argued that, although S.A. may have bonded with his caregivers, he would benefit from being placed with blood family.

Counsel for S.A. asked the juvenile court to deny the petition because S.A. had been with his caregivers since his removal from mother and had bonded with his caregivers, and because paternal grandmother had initially declined to take S.A. Moreover, counsel for S.A. argued that, because paternal grandmother's petition was

---

[4] Paternal grandmother and S.A.'s paternal aunt also filed notices of appeal. By order dated August 11, 2014, we dismissed both appeals. Paternal aunt made no further appearances in these appeals.

filed after the jurisdictional order, the relative placement preference no longer applied. Counsel for CFS also opposed the petition, arguing that paternal grandmother had been assessed for placement but declined to take the child, and placement of S.A. with paternal grandmother would not be in the child's best interest. The juvenile court found that paternal grandmother did not make a prima facie showing of changed circumstances for relief under section 388 and denied the petition. Paternal grandmother timely filed a notice of appeal.

*Termination of Parental Rights*

In a report prepared for the selection and implementation hearing, CFS recommended the juvenile court terminate mother's and father's parental rights and select adoption as the permanent plan for S.A. CFS reported that S.A., who had lived in the home of his prospective adoptive family since his detention, had developed a significant emotional bond with the family, and that he was suitable for adoption.

Mother did not appear for the selection and implementation hearing, so the juvenile court continued the hearing. Although the juvenile court signed two orders directing that mother be transported for the continued hearing, she was not transported and did not appear at the continued hearing. Counsel for father, appearing specially for mother's appointed attorney, entered into the record mother's objections to the termination of her parental rights and to adoption as a permanent plan.

9

Father's counsel presented no affirmative evidence on behalf of father, but objected to the termination of father's parental rights. Counsel argued that father had been hamstrung in the case from the beginning because mother had not informed him of her pregnancy or of S.A.'s birth, and he had not learned about S.A.'s birth until after the jurisdictional hearing, which resulted in his being offered no family reunification services and, consequently, his inability to establish a bond with S.A. Counsel argued that termination of parental rights would not be in S.A.'s best interest because the child would lose the real benefit of being raised by his biological family.

Counsel for S.A. argued that the child was highly adoptable, and that because father received no family reunification services and did not form a bond with the child, the court should adopt the recommendation of CFS, terminate parental rights, and find the child to be adoptable.

Counsel for CFS argued the sole issues before the juvenile court were whether S.A. was adoptable and whether an exception to termination of parental rights applied. Because there was no evidence of a bond between father and S.A., counsel for CFS argued father could not show that termination of his parental rights would be detrimental to the child.

After hearing arguments from counsel, the juvenile court found that S.A. was likely to be adopted, and the beneficial interest exception to section 366.26, subdivision (c)(1)(B)(i), did not apply because father had established no bond with S.A. The court then terminated mother's and father's parental rights. Mother and father timely appealed the termination order.

10

DISCUSSION

A.     *The Juvenile Court Did Not Abuse Its Discretion by Denying Father's Section 388 Petition Without Conducting an Evidentiary Hearing (Case Nos. E061583 & E061906)*

Father contends the juvenile court abused its discretion by denying his section 388 petition without conducting an evidentiary hearing.  Because we conclude father did not make a prima facie showing that modification of S.A.'s placement would be in the child's best interest, we find no abuse of discretion and affirm the order.

"A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child.  [Citation.]  The parent bears the burden to show both a legitimate change of circumstances and that undoing the prior order would be in the best interest of the child.  [Citation.]  Generally, the petitioner must show by a preponderance of the evidence that the child's welfare requires the modification sought.  [Citation.]" (*In re A.A.* (2012) 203 Cal.App.4th 597, 611-612 [Fourth Dist., Div. Two].)

"The juvenile court shall order a hearing [on a section 388 petition] where 'it appears that the best interests of the child . . . may be promoted . . .' by the new order. (§ 388, subd. (d).)  Thus, the parent must sufficiently allege *both* a change in circumstances or new evidence *and* the promotion of the child's best interests.  [Citation.] [¶]  A prima facie case is made if the allegations demonstrate that these two elements are

11

supported by probable cause. [Citations.] It is not made, however, if the allegations would fail to sustain a favorable decision even if they were found to be true at a hearing. [Citations.] While the petition must be liberally construed in favor of its sufficiency [citations], the allegations must nonetheless describe specifically how the petition will advance the child's best interests. [Citations.]" (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1157.)

"This court reviews a juvenile court's decision to deny a section 388 petition without a hearing for abuse of discretion. [Citation.]" (*In re G.B.*, *supra*, 227 Cal.App.4th at p. 1158.) ". . . '"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."' [Citations.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

Technically speaking, father's petition did not allege any changed circumstances whatsoever. Rather, father alleged he was "99.9" percent sure S.A. was his son, and he wanted to raise, protect, and provide proper guidance to S.A. Father alleged placing S.A. in his custody would be in the child's best interest because "he [is] my son and I want to love him and raise him." On those bare allegations, the juvenile court could have summarily denied the petition without holding any hearing. Instead, the juvenile court set the petition for a nonevidentiary hearing.

12

Although the petition only requested S.A. be placed with father, at the initial hearing on the petition, father's counsel asked that paternal grandmother be assessed for placement in the event the paternity test established biological parentage. The juvenile court continued the hearing so it could consider the result of the paternity test. At the continued hearing, father's counsel again informed the juvenile court father was actually requesting that S.A. be placed with paternal grandmother. After hearing arguments from counsel, the juvenile court indicated it was not inclined to conduct a full evidentiary hearing on the petition. Although the result of the paternity test was father's "strongest point" in support of the petition, the juvenile court noted it had not yet heard any indication that placing S.A. with paternal grandmother would be in the child's best interest.

Father's counsel responded, "the benefit is obviously being with your own biological family," a benefit that counsel recognized was "intangible" and unquantifiable. When the juvenile court asked counsel why father was asking for placement with paternal grandmother when the petition itself only requested placement with father, counsel informed the court that father was willing and able to take the child. The juvenile court found that the positive result of the paternity test was a changed circumstance, but concluded father did not meet his burden of showing that modifying S.A.'s placement would be in the child's best interest. The court noted that CFS exercised due diligence in trying to locate father from the beginning, but father did not appear until late in the case and therefore had not been assessed for placement. The court stated, "I don't know the

13

status of whether or not [father] is adequate as a parent or not," and, therefore, denied the petition.

In his brief, father contends he made a prima facie showing in his petition that a modification of S.A.'s placement would be in the child's best interest, and that denial of an evidentiary hearing violated his due process rights. He contends denial of an evidentiary hearing was "egregious" because he did not learn of the proceedings until late in the process, and a full hearing on his petition would be his only opportunity to present the juvenile court with evidence of his fitness as a parent. We disagree.

As noted, father's petition alleged he wanted to raise, care for, and provide proper guidance to S.A. In the petition, father did not allege how removing S.A. from his foster family and placing him in father's care would be in the child's best interest. Nor did father's counsel articulate how the proposed change would be in S.A.'s best interest. At most, counsel argued S.A. would gain a "real" yet "intangible" benefit from being raised by his biological family. Such vague allegations of a benefit to the child did not meet father's burden of making a prima facie showing that removing S.A. from his prospective adoptive parents, with whom he had already bonded and was well cared for, and placing him with father, who had never been assessed for placement, would be in S.A.'s best interest.

With respect to father's allegations he was entirely blameless for his absence from the early stages of the proceedings, the record indicates otherwise. Father called the hospital when S.A. was born and asked that the child be placed in his custody, but the hospital could not release the child to him because mother had only authorized release to

14

CFS. As the juvenile court noted, the record indicates CFS exercised due diligence to locate father and serve him with the section 300 petition, but father could not be located. When father surfaced, the juvenile court had already entered its jurisdictional order, and S.A. had already been in his prospective adoptive home for several months.

On the record before this court, we find no abuse of discretion.

B.      *Paternal Grandmother Was Properly Assessed for Relative Placement, and the Juvenile Court Properly Declined to Place S.A. with Paternal Grandmother (Case Nos. E061583 & E061906)*

Father and paternal grandmother argue CFS never properly assessed paternal grandmother for placement, and the juvenile court erred by not applying the relative placement preference and denying their requests to place S.A. with paternal grandmother. We disagree.

Section 361.3 mandates that, when a child is taken from the physical custody of his or her parents, "preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative . . . ." (§ 361.3, subd. (a).) The county social worker and the juvenile court must consider, inter alia, whether placement of the child with the relative is in the child's best interest. (§ 361.3, subd. (a)(1).)

"Once a child is placed in the home of a nonrelative at the dispositional hearing, the relative placement preference does not arise again until 'a new placement of the child must be made.'" (*In re N.V.* (2010) 189 Cal.App.4th 25, 31, quoting § 361.3, subd. (d); see *In re Lauren R.* (2007) 148 Cal.App.4th 841, 854; but see *In re Joseph T.* (2008) 163 Cal.App.4th 787, 793-798 [rejecting the argument that, after the dispositional hearing, the

15

relative placement preference only applies when a new placement is necessary]; *In re R.T.* (2015) 232 Cal.App.4th 1284, 1300 [noting the split in authority].) Failure to apply the relative placement preference is only reversible if the error was prejudicial, meaning it resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13; *In re N.V.*, at p. 31; *In re Joseph T.*, at p. 798.)

Upon receiving the initial referral, CFS properly considered whether S.A. could be placed with a relative. The reporting party informed one of the social workers that mother agreed to release S.A. to CFS or to paternal grandmother, although the release signed by mother only authorized release to CFS. Both social workers visited the home of S.A.'s maternal grandmother, and learned that she was already caring for three other children and had been confined to a wheelchair after suffering a stroke. When the social worker first spoke to paternal grandmother, she declined to take the child. It was only later, when she learned S.A. was named a "Jr.," that paternal grandmother called back to say she did want the child. Paternal grandmother told the social worker that she was employed as a janitor for the federal court, and that she was willing and able to care for S.A. Paternal grandmother denied having a criminal history. She told the social worker that her own children had been taken from her, but later returned after she went to rehabilitation. CFS held a risk assessment meeting to determine where to place S.A. and concluded he had no appropriate caregiver. Therefore, S.A. was placed in a foster home.

Contrary to the suggestion in father's and paternal grandmother's briefs, CFS did continue to assess relative placement after the initial detention. In the report prepared for the jurisdictional hearing, the social worker informed the juvenile court that paternal grandmother was in the process of being assessed for relative placement when she called to say "she no longer wanted placement and she would be unable to care for [S.A.]" At the jurisdictional hearing, counsel for mother argued for placement of S.A. with her cousin, and the juvenile court authorized such a placement if the cousin was found suitable. After the hearing, CFS conducted an assessment and concluded the cousin was not suitable. Finally, during the hearing on paternal grandmother's section 388 petition, counsel for father argued S.A. should be placed with paternal grandmother because "[t]he grandmother was assessed and found suitable." In other words, despite changing her mind again and telling CFS she could not take S.A., CFS completed its assessment of paternal grandmother.

Nor did the juvenile court err by not considering placing S.A. with paternal grandmother. As indicated, throughout the proceedings, grandmother gave CFS conflicting signals about whether she wanted to or was able to care for S.A., so placing S.A. with paternal grandmother at the dispositional hearing would not have been in the child's best interest. Paternal grandmother filed her section 388 petition after the juvenile court entered its jurisdictional order, and at no time during the remainder of the proceedings did the need arise to change S.A.'s placement. To the contrary, all the reports filed with the juvenile court indicated S.A. was thriving in his foster home and bonding well with his prospective adoptive family. Therefore, after S.A.'s initial removal

17

from mother and the jurisdictional hearing, the relative placement preference never arose again. (*In re N.V.*, *supra*, 189 Cal.App.4th at p. 31; *In re Lauren R.*, *supra*, 148 Cal.App.4th at p. 854.)

Even if we were to conclude that the relative placement preference applied throughout the proceedings (see *In re Joseph T.*, *supra*, 163 Cal.App.4th at pp. 793-798), and that the juvenile court erred by not considering placement with paternal grandmother during the hearings on father's and paternal grandmother's section 388 petitions and at the section 366.26 hearing, we would find no prejudice. "The overriding concern of dependency proceedings . . . is not the interest of extended family members but the interest of the child. '[R]egardless of the relative placement preference, the fundamental duty of the court is to assure the best interests of the child, whose bond with a foster parent may require that placement with a relative be rejected.' [Citation.] Section 361.3 does not create an evidentiary presumption that relative placement is in a child's best interests. [Citation.] The passage of time is a significant factor in a child's life; the longer a successful placement continues, the more important the child's need for continuity and stability becomes in the evaluation of her [or his] best interests. [Citation.]" (*In re Lauren R.*, *supra*, 148 Cal.App.4th at p. 855.)

To repeat, paternal grandmother did not consistently request that S.A. be placed with her. Paternal grandmother initially declined to take the child; she changed her mind when she learned he was named a "Jr." and wanted to take the child; she later told the social worker she no longer wanted to take the child because she could not care for him; and finally, she changed her mind once again and requested that S.A. be placed with her.

18

Although paternal grandmother had no criminal history, she did admit to having her own children taken from her in juvenile court proceedings, apparently because of neglect and drug use, and returned to her after completing a rehabilitation program. This mixed record does not instill confidence that placement of S.A. with paternal grandmother would be in his best interest. Contrarily, the record amply demonstrates that leaving S.A. in the care of his prospective adoptive family, with whom he had bonded and in whose care he was thriving, was very much in his best interest. Therefore, even if the juvenile court erred by not considering the relative placement preference during the hearing on father's and paternal grandmother's section 388 petitions and during the section 366.26 hearing, the error was harmless.

      C.     *Termination of Mother's Parental Rights in Absentia Was Harmless Error (Case No. E062123)*

Finally, mother contends the juvenile court erred by terminating her parental rights in her absence.[5] Although we conclude mother did not waive her right to be present for the section 366.26 hearing, and the juvenile court should not have terminated mother's parental rights in her absence, mother could not have introduced any evidence at the hearing to establish that S.A. was not adoptable or to establish the parent-child benefit exception to termination of parental rights. Therefore, we conclude the error was harmless.

---

    [5] Father filed a brief in mother's appeal, but only to protect and preserve the arguments he made in his own appeal.

19

When a proceeding is brought under the Family Code or under Welfare and Institutions Code section 366.26 to terminate the parental rights of a prisoner, or brought under Welfare and Institutions Code section 300 to determine whether a child of a prisoner is a dependent of the court, the court "shall order notice of any court proceeding regarding the proceeding transmitted to the prisoner." (Pen. Code, § 2625, subd. (b).) If the juvenile court receives a statement from the prisoner or the prisoner's attorney that the prisoner desires to be present for the hearing to declare the child a dependent or to terminate the prisoner's parental rights, the court must order that the prisoner be transported for the hearing. (Pen. Code, § 2625, subd. (d).) The court may not conduct the hearing in the prisoner's or the prisoner's attorney's absence unless the court receives a written waiver signed by the prisoner or by another authorized person. (*Ibid*.) We review failure to comply with Penal Code section 2625 for harmless error and reverse only if the error resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13; *In re Jesusa V.* (2004) 32 Cal.4th 588, 624-625; *In re Marcos G.* (2010) 182 Cal.App.4th 369, 385-386.)

There is no dispute that mother never waived her right to be physically present during the section 366.26 hearing. Nor is there any doubt that, notwithstanding the juvenile court's written orders that mother be transported from prison to be present during the section 366.26 hearing, she was not transported and did not appear. Moreover, mother's counsel was not present for the hearing either. Instead, father's attorney, appearing specially for mother's attorney, entered mother's objections to termination of her parental rights. Finally, there is no doubt that the juvenile court conducted the section

20

366.26 hearing in mother's absence and terminated her parental rights. Therefore, we must conclude the juvenile court erred by not complying with Penal Code section 2625, subdivision (d).

Although we conclude the juvenile court erred by terminating mother's parental rights in her absence, we conclude the error was harmless. As CFS contends in its brief, the issues before the juvenile court at the section 366.26 hearing were extremely limited. "Section 366.26 provides that if parents have failed to reunify with an adoptable child, the juvenile court must terminate their parental rights and select adoption as the permanent plan for the child. The juvenile court may choose a different permanent plan only if it 'finds a compelling reason for determining that termination [of parental rights] would be detrimental to the child [because]: [¶] (i) The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship.' (§ 366.26, subd. (c)(1)(B)(i).)" (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642.)

Mother does not argue that, had she been present for the hearing, she could have presented evidence that S.A. was not likely to be adopted. The record amply supports the juvenile court's finding that S.A. was adoptable. (See *In re J.I.* (2003) 108 Cal.App.4th 903, 913 [assuming error under Pen. Code, § 2625, mother suffered no prejudice from being absent from the Welf. & Inst. Code, § 366.26 hearing because she could not have introduced evidence that the child was not adoptable].) Nor could mother have presented any evidence at the hearing to establish the parent-child benefit exception to termination of parental rights under Welfare and Institutions Code section 366.26,

21

subdivision (c)(1)(B)(i), existed. Mother received no reunification services because of a prior adjudication of abuse or neglect of a sibling and because, in light of her incarceration, services would not be in the best interest of the child. (Welf. & Inst. Code, § 361.5, subds. (b), (e).) Mother did not visit with S.A. either. In other words, mother could not have demonstrated that terminating her parental rights would have been detrimental to S.A. for the simple fact that she had not formed a bond with the child. Therefore, we "can say with confidence that '[n]o other result was possible' even if [mother] had been present. [Citation.]" (*In re Jesusa V.*, *supra*, 32 Cal.4th at p. 626.)[6]

---

[6] In her brief, mother argues the "substitution" of her attorney for father's attorney at the section 366.26 hearing was erroneous because her interests conflicted with father's interest. Father's counsel appeared specially for mother's attorney solely to enter mother's denials and was never substituted for mother's counsel, formally or otherwise. Nor did mother's and father's interests at the hearing necessarily conflict. Although father's counsel argued father had not learned earlier about mother's pregnancy or S.A.'s birth because mother kept it from him, those statements were made in the context of arguing for placement of S.A. with paternal grandmother. Father's counsel never argued in favor of terminating mother's parental rights. In any event, like mother, father received no reunification services and never visited S.A., so he too could not have established that he had a strong bond with the child or that termination of his parental rights would be detrimental to the child.

Mother also argues the substitution of father's counsel for her attorney was inadequate because father's counsel failed to object under Penal Code section 2625, subdivision (d), to the juvenile court proceeding in her absence. To the extent mother raises a claim of ineffective assistance of counsel, we must reject it. As we conclude in the text, the result would have been the same even if mother had been present for the Welfare and Institutions Code section 366.26 hearing. Therefore, counsel's failure to object was harmless. (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 261 ["we may reject a claim of ineffective assistance of counsel if the parent does not show the result would have been more favorable but for trial counsel's failings"].)

## III.

## DISPOSITION

The orders of the juvenile court are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

J.

We concur:

RAMIREZ

P. J.

KING

J.