[No. G020653. Fourth Dist., Div. Three. Apr. 21, 1997.]

In re ANNA M. et al., Persons Coming Under the Juvenile Court Law.
ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v.
KIM M., Defendant and Appellant.

## COUNSEL

Alice C. Shotton, under appointment by the Court of Appeal, for Defendant and Appellant.

Laurence M. Watson, County Counsel, and Mark R. Howe, Deputy County Counsel, for Plaintiff and Respondent.

Harold LaFlamme and Craig E. Arthur, under appointments by the Court of Appeal, for Minors.

## OPINION

SONENSHINE, J.—Kim M., the mother of Anna M., age nine, and Gina M., age seven, appeals from a judgment under Welfare and Institutions Code[1] section 366.26 selecting adoption as her daughters' permanent plan and terminating her parental rights.[2] She contends she was deprived of a fair hearing because she was not given statutorily required notice of the nature of the proceedings. We agree. Because we remand for proceedings comporting with due process, we need not reach the other issues raised by Kim.

I

Anna and Gina were taken into protective custody in September 1994. Their mother's substance abuse rendered her unable to properly care for the children. After the parents pleaded no contest, the allegations of the dependency petitions were found true. In January 1995, the minors were placed with foster parents who, with the court's authorization and Kim's written permission, moved to Nevada for what was to be a temporary work assignment. However, in August, the foster father accepted an offer for permanent employment in Nevada, and the minors were promptly returned to California and, in September, placed in a new foster home. In November, they were moved to the home of their father's cousins, Angel and Carline D., who in their 31 years of marriage, had raised 4 children of their own.

By the time of the 18-month hearing in March 1996, Kim had completed parenting classes, was consistently testing negative for drugs and was in counseling. She had not, however, secured suitable housing or steady employment, or participated in any job retraining program. She was working at day jobs and had applied for welfare relief. Orange County Social Services Agency (SSA) recommended referral to a section 366.26 hearing and a permanent plan of guardianship, based primarily on the minors' "close bond with their mother." SSA further noted the appropriateness of Angel and Carline as guardians, due to the extended family relationships. Angel and

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] The father has not appealed.

Carline, in turn, wanted to become guardians, but were not interested in adopting "out of respect for the attachment of the girls to their parents." The social worker stated, "The minors may well benefit from seeing their parents and knowing that the adults do care about them."

Kim's counsel, acknowledging Kim's present circumstances prevented immediate return of the children, stated Kim was "not opposed to the recommendation of guardianship." The attorney added, "The potential foster mother (Carline) is in the courtroom with [Kim] today and because of the fact that the recommendation in the report is not to terminate parental rights, but go into guardianship, we hope that will remain the recommendation."

The court responded, "I'm well aware of the fact that the mother has made progress and that progress is not discounted in any way . . . , but . . . it's clear that mother is not in a position to receive the children back today and doesn't have a residence and doesn't have steady employment. [¶] . . . [¶] . . . It looks like this is a guardianship case. There's no finding today that that is so. That's the projected recommendation. All I can do is set a hearing pursuant to section 366.26 and apply the facts and come up with the most permanent plan. In all likelihood, it looks like it will be guardianship. [¶] . . . I don't have evidence that either parent has completed the plan and rehabilitated themselves to the place where they can receive these children back into their care today and this is the issue. [¶] It's today or never as far as this hearing is concerned. It doesn't mean as far as what the parents do in the future." Then, after once more noting Kim's progress, and observing there were no grounds for a continuance to give her more time to obtain work and housing, the court stated, "I've no choice but to terminate the services . . . and set the matter . . . for a hearing for which the most permanent plan will be presented to the court. [¶] At this point in time, it looks like it will be guardianship, but things can change. In any case, I have recommendations consistent with the comments that I've made."

The children were "thriving" in the care of Angel and Carline, with whom they were "very bonded," when tragedy struck in late June. Angel suffered a stroke just weeks before the permanency planning hearing. Carline informed the social worker she could not handle the stress of dealing with SSA and the courts and caring for the minors and her husband as well. Anna and Gina were removed and placed at Orangewood Children's Home. In light of the changed circumstances, SSA asked the court to continue the section 366.26 hearing for 60 days, "to properly notice the parents and conduct a new permanency placement assessment." It recommended that adoption and termination of parental rights would be inappropriate, but because there were no longer any candidates to act as guardians, the minors should be ordered into long-term foster care.

Another unexpected turn of events followed. SSA prepared a second report just three days before the scheduled hearing, filing it on the day of the hearing. The report succinctly stated, "A Permanent Placement Assessment was completed . . . . [The assessment worker] found the minors to be adoptable. Based on this information, the undersigned recommends terminating parental rights and facilitating a permanent plan of adoption."

Kim did not appear on July 26. Her counsel's unembellished request for a continuance was denied, the court noting that at the 18-month hearing, the mother had been ordered to appear, but apparently chose not to do so. It also observed, "I don't think any more time would produce her. The fact the recommendation has changed is a circumstance, but unfortunately that is not good cause in any of this to set it aside and to continue this matter, so I'm going to . . . go ahead and proceed." SSA then "clarif[ied] to the court" its changed recommendation identifying adoption, rather than long-term foster care or guardianship, as the appropriate permanent plan. It also said it needed a 90-day continuance under section 366.26, subdivision (c)(3) to allow more time to conduct further placement assessment because the ages of the children and their sibling set made them hard to place. That motion was granted, the court emphasizing the day to present evidence was "today," although the formal orders would issue at the continued hearing. Kim's counsel neither put on a case nor argued. The court took under submission SSA's recommendations and scheduled further proceedings on October 22. In closing, it stated, "And no further notice to mother is necessary. All of the 'T's' have been crossed and 'I's' dotted. Anything else? Off we go."

Kim was present in court on October 22 when her children were freed for adoption and her parental rights were terminated.

## II

Kim and the dependency system as a whole have been ill-served by the defective procedures below. Kim was *twice* deprived of notice regarding what was at stake at the section 366.26 hearing. Next, her counsel utterly failed to make an issue of it at the hearing. Then SSA, which had already acknowledged the notice problem in a court report, forged ahead at full speed, objecting to any continuance on Kim's behalf, while seeking further time to assess the placement issue only. As if that were not enough, Kim's counsel failed to petition for a writ to obtain a speedy remedy and maintained a stony silence throughout the subsequent hearing. And now, on appeal, adding insult to injury, minors' counsel does not even address the

notice issue, and SSA trivializes it by ignoring the constitutional implications and simply arguing, "No harm, no foul."

■ "[P]arents are entitled to due process notice of juvenile proceedings affecting their interest in custody of their children. [Citation.] And due process requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' [Citation.]" (*In re Melinda J.* (1991) 234 Cal.App.3d 1413, 1418 [286 Cal.Rptr. 239].)

■ Section 366.23 concerns notice to a dependent child's parents of the hearing terminating parental rights or establishing guardianship under section 366.26. As relevant here, the statute provides, "[I]f the parent is present at the hearing at which the court schedules a hearing pursuant to Section 366.26 regarding the minor, the court shall advise the parent of the time and place of the proceedings, their right to counsel, the nature of the proceedings, and of the requirement that at the proceedings the court select and implement a plan of adoption, legal guardianship, or long-term foster care for the minor. The court shall order the parent to appear for the proceedings and then direct that the parent be noticed thereafter by first-class mail to the parent's usual place of residence or business only." (§ 366.23, subd. (b)(6).)

All parties agree the court did *not*, either in statutory language *or* in a functional equivalent, advise Kim that at the *next* hearing it was required to "select and implement a plan of adoption, legal guardianship, or long-term foster care for the minor." (§ 366.23, subd. (b)(6).) Rather, at least three times the court emphasized the likelihood of guardianship as the permanent plan, albeit not *guaranteeing that result.*

We disagree with SSA's argument "the advisement given was reasonably calculated to apprise [Kim] that adoption or some other long term plan would be selected and that her parental rights could be terminated." The oral notice was *not* framed in language adequate to notify Kim of what was truly at stake in the section 366.26 hearing. (See *In re Neal D.* (1972) 23 Cal.App.3d 1045, 1048 [100 Cal.Rptr. 706] [". . . a parent is entitled to be apprised of the charges he [or she] must meet in order to prepare his [or her] case, and . . . must be given an opportunity to be heard and to cross-examine his [or her] accusers"].)

Consider the context: SSA had acknowledged the strong bond between Kim and the minors; Anna and Gina were in the home of Angel and

Carline, relatives who facilitated visits and agreed to guardianship out of sensitivity to the mother/daughter relationship; Kim, unable to seek immediate return of the children due solely to lack of adequate income and housing, and no doubt taking comfort in the prospect of continuing contact with the minors, had no objection to the permanent plan of guardianship which, according to the court, "[i]n all likelihood" would be ordered. Under the circumstances, it cannot be said Kim was warned she was in jeopardy of having her relationship with Anna and Gina unalterably severed at the next hearing.

Compounding the insufficiency of the oral notice, of course, was the complete lack of written notice: The court did *not* "direct that [Kim] be noticed thereafter by first-class mail to [her] usual place of residence" (§ 366.23, subd. (b)(6)), or to the place where she customarily received her mail. SSA, in an attempt to minimalize this deficiency, characterizes it as an inconsequential failure "to mail [Kim] [a] *confirmation* notice." It concludes, without reference to any particular factual basis, that Kim could not have been unfairly surprised. And it argues, without citation to illuminating authority, "Any possible prejudice that might have resulted does not necessitate reversal." We are unpersuaded.

To the contrary, even assuming Kim must show prejudice in face of such a fundamentally flawed procedure, we have no trouble finding prejudice. Unadvised of the true nature of what might happen at the section 366.26 hearing, Kim was not present. Her attorney requested a continuance, but did not raise the lack of notice issue. Had counsel raised the issue, the court would have had no choice but to continue, to provide for proper service—a point which SSA virtually conceded in its court report. Yet SSA *objected* to any continuance to accommodate Kim's interest. And, denying the continuance, the court concluded, perhaps entirely unfairly, that Kim was absent due to lack of interest in her children's welfare. Finally, the record clearly indicates Kim's counsel's unpreparedness to deal with the changed situation.

SSA, overlapping the notice issue with the ineffective-assistance-of-counsel issue, argues Kim has failed to show how her counsel's "total inaction" prejudiced her. We disagree. Prejudice occasioned by lack of notice, coupled with lack of advocacy, virtually leaps from the record. Regardless of our aversion to prolonging Anna and Gina's life in limbo, we cannot endorse the juvenile court's disregard of the notice requirements of section 366.23. Kim has a due process right to a fair hearing.

The judgment is reversed. The case is remanded for further proceedings conforming to this decision.

Sills, P. J., and Rylaarsdam, J., concurred.