[No. H025059. Sixth Dist. May 19, 2003.]

In re J. I. et al., Persons Coming Under the Juvenile Court Law.
SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND
CHILDREN'S SERVICES, Plaintiff and Respondent, v.
L. I., Defendant and Appellant.

[No. H025358. Sixth Dist. May 19, 2003.]

In re L. I. on Habeas Corpus.

## COUNSEL

Carol A. Koenig, under appointment by the Court of Appeal, for Defendant and Appellant and for Petitioner.

Ann Miller Ravel, County Counsel, and Teri L. Robinson, Deputy County Counsel, for Plaintiff and Respondent.

George W. Kennedy, District Attorney, and Robert J. Masterson, Deputy District Attorney, for Minors.

## OPINION

**PREMO, Acting P. J.—**

### INTRODUCTION

L.I. (Mother) appeals from orders of the juvenile court terminating her parental rights to her son, J.I., and her daughter, J.H. In her opening brief Mother contends that she received inadequate notice of the hearing at which her rights were terminated, that there was insufficient evidence to support the finding that the children were adoptable, and that the court erred in refusing to continue the hearing when she did not appear. Mother has also filed a petition for writ of habeas corpus in which she seeks to bolster her contention that the court erred in refusing to continue the hearing. We ordered the habeas corpus petition considered with this appeal.

While this appeal was pending, J.I. was removed from the prospective adoptive home where he and J.H., and their half sister S.R. had been placed together.[1] The Santa Clara County Department of Family and Children's Services (the Department) now concedes that 15-year-old J.I. is not adoptable and the order terminating parental rights as to him must be reversed to avoid his becoming a legal orphan.[2] In light of J.I.'s changed circumstances, Mother raises the additional contention that the order pertaining to J.H. must also be reversed and her case remanded for the juvenile court to consider whether termination will substantially interfere with the siblings' relationship. (Welf. & Inst. Code, § 366.26, subd. (c)(1)(E).)[3] We requested and have received supplemental briefing from the Department and the children on this issue.

---

[1] S.R.'s case is on a different timetable so that this appeal does not directly concern her.

[2] We granted the department's request that we take judicial notice of its March 5, 2003 status report pertaining to J.I. and the juvenile court's order entered that day.

[3] Further statutory references are to the Welfare and Institutions Code.

We conclude that reversal as to J.I. is appropriate. We shall affirm the juvenile court's order terminating parental rights as to J.H. and deny Mother's petition for writ of habeas corpus.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Appellate Record

In May 2000 the juvenile court sustained the Department's petition alleging that Mother had failed to protect her three children, J.I., S.R. and J.H. (§ 300, subd. (b).) J.I. was 12, S.R. was eight, and J.H. was two years old at the time. A year later the juvenile court terminated reunification services and set a section 366.26 hearing to select a permanent plan for J.I. and J.H. The hearing was reset a number of times and was finally held on March 13, 2002. Mother was present at the hearing. The court identified adoption as the permanent placement goal for J.I. and J.H. but declined to terminate parental rights at that time.[4] The court continued the hearing for 180 days to give the Department time to locate an appropriate adoptive home and set a continued hearing for September 9, 2002. On March 15, 2002, the Department mailed notice of the continued hearing date to Mother's last known address.

Mother last saw her children during a visit in April 2002. No visits took place in May or June because Mother had been incarcerated. Mother contacted the social worker in July asking to reinstate visits and two visits were set up for August. However, toward the end of August the social worker learned that Mother was again incarcerated and those visits had to be cancelled. The juvenile court issued an order on August 28, 2002, requiring Mother to be transported from Monterey County jail to the September 9, 2002 hearing in Santa Clara County.

The continued hearing was held as scheduled on September 9, 2002. Mother did not appear. Mother's attorney asked the court to continue the matter because the attorney had not yet spoken with Mother about the Department's latest report. After confirming that Mother had been notified of the hearing date, the court denied counsel's request.

The Department's report for the continued hearing indicated that the children were placed with a family that was committed to all of them. The Department recommended that the court terminate parental rights to J.I. and J.H. to free them for their expected adoption. The court so ordered..

---

[4]Mother appealed from the order of March 13, 2002. We affirmed the juvenile court's order in an unpublished decision on October 15, 2002 (H024251). We have taken judicial notice of the record in that case.

*The Postjudgment Evidence*

The Department's March 5, 2003 status report reveals that J.I. remained with his sisters in the "fost-adopt" home until January 2003 when his placement was terminated. He was moved to the children's shelter where he remained at the time of the March 5, 2003 report. J.I. had no legal relatives because the juvenile court had previously terminated parental rights as to him, and there was no suitable person available to assume legal guardianship of him. The court ordered his permanent plan changed from adoption to planned permanent living arrangement and ordered that he continue under the care, custody and control of the Department for placement in a suitable foster home. The court ordered visitation with his two sisters at least twice per month.

## ISSUES

1. Did Mother receive adequate notice of the hearing at which her parental rights were terminated?

2. Was the evidence sufficient to support the finding that J.H. was likely to be adopted?

3. Did the juvenile court err in refusing to continue the hearing at which Mother's parental rights were terminated?

4. In light of the Department's concession that the order terminating parental rights to J.I. must be reversed, should the matter be remanded for the juvenile court to consider whether the sibling relationship exception of section 366.26, subdivision (c)(1)(E) should apply to preclude termination of parental rights to J.H.?

## DISCUSSION

*Did Mother Receive Adequate Notice of the Hearing?*

In general, due process requires only that the parent receive notice " ' "reasonably calculated, under all the circumstances, to apprise interested parties of the [continued] pendency of the action and afford them an opportunity to present their objections." ' " (*In re Anna M.* (1997) 54 Cal.App.4th 463, 468 [62 Cal.Rptr.2d 831].) Former section 366.23, subdivision (a), which applied at all times relevant here, set forth detailed requirements for notifying parents whenever the court set a section 366.26

hearing.[5] ■ Under former section 366.23, it was not necessary to give a parent a second notice conforming to the requirements of that section if he or she received proper notice of the hearing in the first instance and the hearing was continued to another date when the parent was present in court. (*In re Malcolm D.* (1996) 42 Cal.App.4th 904, 913 [50 Cal.Rptr.2d 148].) That was because "duplication of the more demanding and time-consuming service requirements of [former] section 366.23, where the permanent plan recommendation is not changed, would do nothing to enhance the likelihood the parent would appear at the continued hearing." (*In re Phillip F.* (2000) 78 Cal.App.4th 250, 258-259 [92 Cal.Rptr.2d 693].) Actual notice of the continued hearing date was sufficient so long as the Department's recommendation concerning the child's placement was unchanged. (*Id.* at p. 259.)

The September 9, 2002 hearing at which Mother's parental rights were terminated was a continuation of the section 366.26 hearing first held on March 13, 2002. Mother does not challenge the sufficiency of the notice she received for the March 13, 2002 hearing, nor does she deny that it contained notice that the Department then recommended termination of her parental rights. Mother also acknowledges that she was present in court on March 13, 2002, and received actual notice of the date to which the hearing was continued. Nevertheless, Mother argues that since adoption was "sufficiently uncertain" on March 13, 2002, and since parents in the dependency system have many problems that compromise their abilities, the Department should have sent another formal notice closer to the time of the hearing. We are not persuaded.

Mother received all the notice the law required. We have no facts to suggest that another notice would have increased the likelihood that she would have appeared at the hearing or that she would have contacted the social worker to explain her absence. Under all the circumstances, the notice she received was reasonably calculated to apprise her of the date of the hearing.

*Was There Sufficient Evidence of Adoptability?*

Mother next argues that there is insufficient evidence to support the court's finding that the children are adoptable. Since the Department concedes that J.I. is no longer adoptable, Mother's argument now relates only to J.H.

At a section 366.26 hearing the juvenile court is expected to select a permanent placement plan for a dependent child. The preferred plan is

---

[5]Section 366.23 has been repealed and replaced by section 294, effective January 1, 2003. (Stats. 2002, ch. 416, § 16.)

adoption. (§ 366.26, subd. (b).) In order to select adoption as the permanent placement plan the juvenile court must find by clear and convincing evidence that it is likely that the child will be adopted. In making that determination the court focuses on whether the child's age, physical condition and emotional state will create difficulty in locating a family willing to adopt her. (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649 [28 Cal.Rptr.2d 82].)

 ■ "On review of the sufficiency of the evidence, we presume in favor of the order, considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576 [32 Cal.Rptr.2d 535].) The "clear and convincing" standard is for the edification and guidance of the juvenile court. It is not a standard for appellate review. (*In re Heidi T.* (1978) 87 Cal.App.3d 864, 871 [151 Cal.Rptr. 263].) " 'The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal.' [Citations.]" (*Crail v. Blakely* (1973) 8 Cal.3d 744, 750 [106 Cal.Rptr. 187, 505 P.2d 1027].) "Thus, on appeal from a judgment required to be based upon clear and convincing evidence, 'the clear and convincing test disappears . . . [and] the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong.' [Citation.]" (*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 881 [101 Cal.Rptr.2d 187].)

The Department reported that J.H. was an attractive, healthy, five-year-old girl with a great sense of humor and a quick wit. She was bright and excited about school, having just started kindergarten that year. J.H.. was having nightmares and looked terrified when told "no." However, both J.H. and her prospective adoptive parents were working with a new therapist on these and other issues. Significantly, J.H. was living with a family that wanted to adopt her. ■ "[A] prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family.*" (*In re Sarah M.,* *supra,* 22 Cal.App.4th at p. 1650.) This is substantial evidence to support the juvenile court's finding that J.H. was likely to be adopted.

*Did the Juvenile Court Err in Refusing to Continue the Hearing Date?*

*The Appeal*

 ■ Mother argues on appeal that the juvenile court erred in refusing her counsel's request for a continuance. She presumes that with a

short continuance her attorney would have located her and she would have appeared at the hearing. If that had been the case, Mother says she would have instructed her attorney to contest the issue of the children's adoptability.

■ A continuance shall be granted only on a showing of good cause and shall not be granted if it is contrary to the minor's best interests. (§ 352, subd. (a).) In considering a request for a continuance, the court must "give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (*Ibid.*) We reverse an order denying a continuance only on a showing of abuse of discretion. (*In re Ninfa S.* (1998) 62 Cal.App.4th 808, 810-811 [73 Cal.Rptr.2d 209].)

■ Mother's attorney's request did not offer the court good cause for the continuance. The only reason offered was that counsel had not yet spoken with her client, apparently because she did not know where she was. All three children were then living together in a prospective adoptive home and all indications were that the adoption was going to proceed as to all of them. The court confirmed that Mother had been notified of the hearing. Under these circumstances the court did not abuse its discretion in denying counsel's request for a continuance.

*The Petition for Writ of Habeas Corpus*

By way of her petition for writ of habeas corpus Mother informs us that she did not appear at the September 9, 2002 hearing because she was being held involuntarily in a mental health facility in Santa Cruz County. She had been released from custody in Monterey on August 29, 2002, but was taken into custody in Santa Cruz County on September 3, 2002, on a section 5150 hold. She was not discharged until September 12, 2002. Because she was involuntarily hospitalized at the time, Mother contends that the juvenile court denied her right under Penal Code section 2625 to be present at the hearing.

■ Since a petition for a writ of habeas corpus is a collateral attack on a presumptively correct final judgment, the petitioner "bears a heavy burden" to plead sufficient grounds for relief. (*People v. Duvall* (1995) 9 Cal.4th 464, 474 [37 Cal.Rptr.2d 259, 886 P.2d 1252].) A petition will be summarily denied if it does not state a prima facie case for relief. (*Id.* at p. 475.)

Penal Code section 2625, subdivision (d) provides that when a parent is incarcerated, no proceeding seeking to terminate parental rights may be held

without the physical presence of the incarcerated parent or the parent's attorney, unless the parent gives the court a written waiver of the right to be present. If there is no written waiver, the court must order the parent to be transported to the hearing. (Pen. Code, § 2625, subd. (e).) Mother argues that the juvenile court should have known she wanted to be personally present at the hearing and because she had not provided a written waiver the court erred in holding the hearing in her absence.

We can hardly fault the juvenile court for presuming that Mother chose not to be present after the court had ordered her to be transported from jail and did not know that she had been released and rearrested in another county. Nevertheless, assuming the court erred in failing to continue the hearing to ascertain Mother's whereabouts, the error was not prejudicial.

The only prejudice Mother asserts is that she lost the opportunity to challenge the court's finding that the children were adoptable. That issue is now moot as to J.I. As to J.H., there was no significant evidence that she was not adoptable. Mother argues that J.H. had some nightmares, depression, and oppositional behavior, and had some regressive behavior when disciplined. But the juvenile court had this information before it and still found that the child was likely to be adopted. We do not doubt that a crucial consideration was the fact that J.H. was thriving in the home of the family that wanted to adopt her. It is hardly probable that had the court continued the hearing Mother's presence would have changed the outcome. Therefore, assuming the court erred in refusing to continue the hearing, the error was harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *In re Nalani C.* (1988) 199 Cal.App.3d 1017, 1028 [245 Cal.Rptr. 264].) Consequently, Mother's petition for habeas corpus fails to state a prima facie case and must be denied.

*Is Reversal of J.H.'s Case Required?*

The information that J.I. was no longer placed with his two sisters came to light when the Department filed its brief in this matter. In her reply brief Mother argued that since J.I.'s circumstances had changed, we must reverse the court's order pertaining to J.H. and remand her case so that the juvenile court may determine whether or not section 366.26, subdivision (c)(1)(E) (the sibling relationship exception) would apply to preclude termination of parental rights as to J.H. In response to our request for supplemental briefing on that issue the children's counsel advises us that he does not believe it is in J.H.'s interest to challenge the court's order terminating parental rights as to her. The Department vigorously opposes reversal,

arguing that to do so is inconsistent with the legislative goal of streamlining the dependency process in order to provide dependent children with a permanent placement as soon as possible.

 "The general rule is that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' (See *In re James V.* (1979) 90 Cal.App.3d 300, 304 [153 Cal.Rptr. 334].) This rule serves to promote speedy adjudications of fact and to avoid prolonged delays on appeal." (*In re Elise K.* (1982) 33 Cal.3d 138, 149 [187 Cal.Rptr. 483, 654 P.2d 253] (conc. opn. of Bird, C. J.) (*Elise K.*).) In *Elise K.*, our Supreme Court was confronted with a situation very similar to the instant matter. The mother appealed an order terminating parental rights to her daughter, Elise. During the pendency of the appeal Elise's adoptive placement failed and she was returned to foster care. The appellate court refused to give weight to that postjudgment fact and the Supreme Court granted review to determine whether the appellate court could consider such evidence. It became unnecessary for the court to analyze the question in depth when the parties presented a stipulation asking that the judgment be reversed and the cause remanded for further proceedings. The court determined that it was appropriate to accept the stipulation and reversed the judgment. (*Id.* at p. 139.)

 Because the parties in the present case all agree that reversal is appropriate as to J.I., we follow the lead of our Supreme Court in accepting their agreement and reversing the judgment as to him. J.H.'s situation, however, is a different matter.

The practice of accepting postjudgment facts on appeal for the purpose of reversing an order terminating parental rights has been applied rarely and only in the most compelling cases. Our Supreme Court has never sanctioned the practice other than in *Elise K.* where the parties stipulated to the reversal. In her concurring opinion in *Elise K.*, Chief Justice Bird suggested that where there was a dispute on the point, reviewing courts should accept additional evidence as allowed by Code of Civil Procedure section 909, "if compelling new circumstances arise which undermine the basis for [an order terminating parental rights] during a parent's appeal from such an order." (*Elise K., supra*, 33 Cal.3d at p. 150 (conc. opn. of Bird, C. J.).) Persuaded by Chief Justice Bird's reasoning, the court in *In re Jayson T.* (2002) 97 Cal.App.4th 75, 78 [118 Cal.Rptr.2d 228] (*Jayson T.*) did just that. In *Jayson T.* the children's adoptive placement failed while the parent's appeal was pending. The appellate court took judicial notice of that fact, reversed the order terminating parental rights, and remanded the matter to the trial court to determine whether the children were really adoptable. (*Id.* at p. 78.) The

court stated that its primary concern should be the interests of the children, not the traditional strictures of appellate procedure. (*Id.* at pp. 88-89.)

Yielding to the interests of J.H., we find no compelling reason to reverse the order terminating parental rights as to her. In both *Elise K.* and *Jayson T.*, not only had the children's prospective adoptive placements failed during the pendency of the parent's appeal, there were also serious questions about whether or not the children were generally adoptable. The only reason a juvenile court terminates parental rights is to free the child for adoption. If the child is not adoptable, termination merely renders the child a legal orphan. The fact of J.I.'s changed placement does not undermine the basis for the court's finding that J.H. is adoptable, i.e., that she is a bright little girl who is living with a family that wants to adopt her. Therefore, unlike *Elise K.* and *Jayson T.*, and unlike her brother J.I., J.H. will not become a legal orphan as a result of the order terminating parental rights.

Since J.I.'s changed placement does not affect J.H.'s adoptability, the juvenile court could only revise its order as to J.H. if it found "a compelling reason for determining that termination would be detrimental" to her. In this case that would be if termination would cause "substantial interference" with her sibling relationship. (§ 366.26, subd. (c)(1)(E).) In order for the juvenile court to find that termination would be detrimental to J.H., it would have to find that her relationship with J.I. was so significant that ongoing foster care or another tenuous placement would be better than adoption for this five-year-old child. We are convinced that would not be the case because even in light of her brother's changed placement, J.H. does not join her Mother's request for reversal.[6] Thus it appears that if we were to reverse the order as to J.H. the only effect it will have is to delay her adoption. We therefore reject Mother's contention that the order must be reversed as to J.H.

## DISPOSITION

The order of the juvenile court terminating parental rights as to J.I. (Santa Clara County Super. Ct. case No. JD11817) is reversed.

The order of the juvenile court terminating parental rights as to J.H. (Santa Clara County Super. Ct. case No. JD11819) is affirmed.

---

[6]This is in contrast with both *Elise K.* and *Jayson T.*, where the *children* sought reversal of the orders terminating parental rights. (See *Elise K.*, *supra*, 33 Cal.3d at p. 139; *Jayson T.*, *supra*, 97 Cal.App.4th at p. 82.)

Mother's petition for writ of habeas corpus is denied.

Bamattre-Manoukian, J., and Wunderlich, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 20, 2003. Baxter, J., did not participate therein.