Filed 5/19/16  In re Paris B. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Paris B., a Person Coming Under the Juvenile Court Law. | B267177 (Los Angeles County Super. Ct. No. DK08460) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  Travis P.,  Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County. Debra Losnick, Judge.  Affirmed.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Tracey F. Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minor.

* * * * * *

Travis P. (father) argues that the juvenile court erred in asserting dependency jurisdiction over his infant daughter, Paris B., and in removing her from his custody. We conclude that substantial evidence supports the juvenile court's rulings and affirm.

**FACTUAL AND PROCEDURAL HISTORY**

Father and Rosalinda B. (mother) are the parents of Paris. Paris was born in January 2015.

Soon after Paris's birth, mother tested positive for marijuana and continued to breastfeed Paris. At the same time, mother's two other children by a different father, Israel and Faith, were in the midst of a separate dependency proceeding. Mother is also diagnosed as bipolar, and has been prescribed medication for this condition. Sometimes, mother has stated she diligently takes her medication; other times, mother admits that she does not always take her medication, partly because she prefers to self-medicate with marijuana. Mother's mental condition causes her to have trouble understanding, remembering and concentrating; this results in limited judgment and limited parenting skills.

Father has admitted to having "serious depression" and "serious anxiety," to having "serious thoughts of suicide" in the past, and to being prescribed medication for these psychological and emotional problems in the past, although he says he never took any such medication. In October 2014, a licensed marriage and family therapist concluded, as part of a "diagnostic impression," that father suffers from adjustment disorder with mixed anxiety and depressed mood. Father denies any mental illness.

In February 2015, the Los Angeles County Department of Children and Family Services (Department) filed a petition asking the juvenile court to exert dependency jurisdiction over Paris on nine grounds, three of which are pertinent to this appeal: (1) mother has mental and emotional problems (namely, being bipolar and not taking her

medication) that endanger Paris (Welf. & Inst. Code, § 300, subd. (b))[1]; (2) father has mental and emotional problems (namely, suffering from adjustment disorder with mixed anxiety and depressed mood) that endanger Paris (*ibid.*); and (3) mother has a history of substance abuse that has resulted in the abuse and neglect of Paris's half-siblings Israel and Faith, and that Paris is at substantial risk of abuse or neglect (§ 300, subd. (j)).[2]

Over the next several months, mother and father underwent drug testing; each had positive tests for marijuana in March and April 2015, but had only negative tests thereafter. Mother and father also had supervised visits with Paris. During one June 2015 visit, mother tried to give Paris (then, five months old) a Jolly Rancher candy, and was stopped by the monitor because the hard candy posed a choking risk. During a July 2015 visit, mother tried to give Paris (then, six months old) a type of candy icing. During another visit, mother fell asleep with Paris on her lap and, when mother awoke, she said she could not feel her legs in a panicked voice; despite her panic, father did nothing to help mother or Paris.

Father also submitted a letter from a different licensed marriage and family therapist, dated August 10, 2015, indicating that she "did not see [father] as depressed or anxious, and did not diagnose him as such."

The juvenile court held the jurisdictional and dispositional hearing on August 14, 2015. The court found sufficient evidence to sustain the three allegations described above, and also found clear and convincing evidence that leaving Paris with mother and father would place Paris at substantial risk of harm. The court ordered reunification services.

Father timely appeals.

---

[1]     Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

[2]     The juvenile court did not sustain the other six allegations asserted as a basis for dependency jurisdiction, so they are not relevant to our analysis.

3

## DISCUSSION

Father challenges the sufficiency of the evidence supporting the juvenile court's jurisdictional and dispositional findings.

## I. Jurisdictional Findings

Father challenges all three of the juvenile court's jurisdictional findings, alleging that there is insufficient evidence to support them. In evaluating the sufficiency of the evidence, our task is limited: We ask only whether the record contains "'sufficient facts to support the findings of the [juvenile] court,'" and do so while drawing all inferences in favor of those findings and while viewing the record as a whole. (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

As a threshold matter, the Department argues that father does not have standing to challenge the two jurisdictional findings based on *mother's* conduct. As a general matter, any parent who is "aggrieved" by a ruling of the juvenile dependency court may assail that ruling on appeal. (*In re T.G.* (2010) 188 Cal.App.4th 687, 692; § 395.) "To be aggrieved, a party must have a legally cognizable interest that is injuriously affected by a court's decision." (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 999.) "'Where the interests of two parties interweave, either party has standing to litigate issues that have a[n] impact upon on the related interests.' [Citation]." (*In re Caitlin B.* (2000) 78 Cal.App.4th 1190, 1193.) Because "a jurisdictional finding good against one parent is good against both" (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397), the juvenile court's jurisdictional findings regarding mother has an impact on a "related interest[]" that affects *father*—namely, the court's dependency jurisdiction over Paris. (Cf. *In re Christopher M.* (2014) 228 Cal.App.4th 1310, 1316 ["(w)here . . . a father challenges the evidentiary support for jurisdictional findings based on his conduct, *but does not challenge the jurisdictional findings based on the mother's conduct*, the appellate court may decline to address the father's challenge"], italics added.) Put differently, father is not attacking the juvenile court's jurisdictional findings as to mother for mother's sake; he is attacking them for his own. (Cf. *Caitlin B.*, at pp. 1193-1194 [mother does not have

standing to challenge absentee father's rights to proper notice of dependency proceedings]; *In re D.S.* (2007) 156 Cal.App.4th 671, 674 [father and minors do not have standing to challenge denial of due process as to mother's petition for changed circumstances].) Accordingly, father has standing to challenge all three jurisdictional findings.

### A. Findings under section 300, subdivision (b)

A juvenile court may assert dependency jurisdiction over a child if, among other grounds, the court finds that "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness." (§ 300, subd. (b).) Before jurisdiction may attach under this provision, the Department must prove (1) "neglectful conduct" (in this case, mental illness), (2) causation, (3) "'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820 (*Rocco M.*), quoting § 300, subd. (b)(1); § 355, subd. (a).)

Father levels three attacks at the evidence supporting the allegations that his mental illness and mother's mental illness satisfy these requirements. First, he argues that there was insufficient evidence that he suffers from any mental illness. For support, he points to the letter he submitted in August 2015 reporting a diagnosis of no mental illness. He urges us to disregard the October 2014 diagnosis to the contrary. "His citation of conflicting evidence is of no avail" (*People v. Panah* (2005) 35 Cal.4th 395, 489) because, in reviewing a finding for substantial evidence, we may not reweigh that evidence (*People v. Prunty* (2015) 62 Cal.4th 59, 89). Father urges that the earlier diagnosis was made only by a licensed marriage and family therapist. But so was the latter. What is more, father's proffered letter does not deny the facts upon which the first diagnosis was based—namely, father's prior admissions to suffering from "serious depression" and "serious anxiety," and to having "serious thoughts of suicide" in the past.

Second, father argues that there was insufficient evidence that mother was not

5

taking her medication for her bipolar condition. Again, there was evidence to suggest she was not taking her medication consistently; that there was also evidence she was taking her medication is, as noted above, of no avail.

Lastly, father asserts that there was insufficient evidence that his mental illness or mother's mental illness place Paris at "substantial risk of serious physical injury." Mental illness alone is not enough to demonstrate risk; "something more" is required. (*In re A.G.* (2013) 220 Cal.App.4th 675, 684; *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1004.) Here, that "something more" exists. A "substantial risk of serious physical danger" can be established: (1) by proof of a "identified, specific hazard in the child's environment"; or (2) by the failure to rebut the presumption that "the absence of adequate supervision and care poses an inherent risk to the[] physical health and safety" of "children of . . . tender years." (*Rocco M.*, *supra*, 1 Cal.App.4th at p. 824; *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216, 1220.) In this case, Paris—being just over one year old—is a child of "tender years," and neither mother nor father have put forth evidence to rebut the presumption that their mental illnesses pose an inherent risk to their ability to care for her. Indeed, the evidence before the juvenile court *confirms* that risk: Mother was feeding Paris rock candy that posed a choking risk and unhealthy icing candy, and neither mother nor father took any actions when mother claimed to have lost feeling in her legs while Paris was still on her lap. These same facts demonstrate that mother and father also pose an "identified, specific hazard" to Paris.

### B.     Findings under section 300, subdivision (j)

A juvenile court may also assert dependency jurisdiction over a child if (1) the child's sibling has been abused or neglected within the meaning of section 300, and (2) there is a substantial risk that the child will be abused or neglected. (§ 300, subd. (j).) In this case, the juvenile court took judicial notice of the court's assertion of dependency jurisdiction over Israel and Faith due to mother's history of substance abuse. (Evid. Code, § 452, subd. (d).) For the reasons described above, Paris is also at substantial risk of abuse or neglect.

6

Father argues that the risk to Paris has been dissipated by the fact that mother was testing negatively for marijuana in the four months immediately prior to the juvenile court's assertion of dependency jurisdiction. This is unpersuasive for two reasons. First, although mother's efforts at sobriety are encouraging and praiseworthy, they come after years of drug use. Courts have long concluded that the risk arising from longstanding use is usually not ameliorated by a short, recent period of sobriety. (E.g., *In re Clifton B.* (2000) 81 Cal.App.4th 415, 423-424 [200 days insufficient to convince juvenile court that a relapse would not occur]; *In re Amber M.* (2002) 103 Cal.App.4th 681, 686-687 [relapse following 300 days of sobriety].) Second, mother's earlier attitude toward her use of marijuana reinforces the juvenile court's concerns that her recent sobriety may not reflect a permanent change: Mother used marijuana while breastfeeding; she believes that "everyone" self-medicates with marijuana rather than taking the medications prescribed for their mental illness; and she stated that marijuana helps her calm down and remember things.

## II.     Dispositional Findings

Father also challenges the juvenile court's ruling removing Paris from his custody. A juvenile court may remove a child from her parent only if the court finds, by clear and convincing evidence, that (1) returning the child home would pose "a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor" and (2) "there are no reasonable means by which the minor's physical health can be protected" short of removal. (§ 361, subd. (c)(1); *In re T.V.* (2013) 217 Cal.App.4th 126, 135.) "'A removal order is proper if it is based on proof of parental inability to provide proper care for the minor and proof of a potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child. [Citation.]' [Citation.]" (*In re Miguel C.* (2011) 198 Cal.App.4th 965, 969.) We review the court's dispositional findings for substantial evidence. (*T.V.*, at p. 136.) In doing so, we give no extra weight to the clear-and-

7

convincing standard of proof: "'"'[O]n appeal from a judgment required to be based upon clear and convincing evidence, 'the clear and convincing test disappears.'"'" (*In re J.S.* (2014) 228 Cal.App.4th 1483, 1493, quoting *In re J.I.* (2003) 108 Cal.App.4th 903, 911.)

Father contends there was insufficient evidence to establish a substantial danger to Paris. As described above, however, there is substantial evidence in the record to support a finding of substantial danger.

## DISPOSITION

The orders of the juvenile court are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
                    HOFFSTADT

We concur:

_____, P.J.
BOREN

_____, J.
ASHMANN-GERST