Filed 8/29/24  In re T.S. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re T.S., a Person Coming Under the Juvenile Court Law. | C099680 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STKJVDP20180000510) |
| Plaintiff and Respondent, | |
| v. | |
| P.M., | |
| Defendant and Appellant. | |

Mother, P.M., appeals from the juvenile court's orders entered at a selection and implementation hearing under Welfare and Institutions Code section 366.26 terminating parental rights to her son, T.S.[1]  She contends that she did not receive adequate notice of the hearing, in violation of her right to due process and the requirements of section 294.

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

Alternatively, she asserts that the juvenile court abused its discretion in refusing to continue the proceedings. She also argues that the San Joaquin County Human Services Agency (Agency) did not comply with the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law by failing to contact known relatives about T.S.'s possible Native American heritage.

We reject mother's due process claim and her challenge to the juvenile court's decision to proceed with the section 366.26 hearing. We conclude, however, that a limited remand to comply with the ICWA is necessary.

BACKGROUND

I.

In December 2018, the Agency filed a section 300 petition alleging that mother and T.S.'s father (father) were not capable of caring for newborn T.S. due to their substance abuse. (§ 300, subd. (b)(1).) Mother told the social worker preparing the detention report that she might have Native American heritage through her father, but she could not identify the tribe. Father reported that he had no Native American ancestry.

The juvenile court appointed counsel for each parent at the detention hearing. The court also advised parents of the ICWA's requirements and provided them with Parental Notification of Indian Status (Judicial Council Forms, form ICWA-020) (ICWA-020) forms. Mother and father filed their forms on January 10, 2019, indicating no Native American ancestry. A second set of ICWA-020 forms was completed later the same month, also indicating no Native American heritage. According to the Agency's disposition report, parents also denied Native American ancestry at the detention hearing.

In February 2019, the juvenile court adjudicated T.S. a dependent child of the court, and parents were ordered to participate in reunification services, including drug treatment. Parents participated in services, and on April 22, 2020, T.S. was returned to his parents' care with family maintenance services.

2

In October 2020, parents relapsed. Father continued to use drugs, and mother entered a residential treatment facility with T.S. Father's reunification services were terminated in February 2021; the juvenile court continued mother's family maintenance services.

In November 2021, the juvenile court gave mother full custody of T.S. with supervised visits for father and terminated dependency jurisdiction. It does not appear from the record that the court made any ICWA findings during these dependency proceedings.

II.

In July 2022, the Agency filed a new petition under the same case number, alleging that T.S. came within the jurisdiction of the juvenile court (§ 300, subd. (b)(1)). The petition included allegations related to T.S.'s previous dependency proceedings and additionally alleged that mother had relapsed into drug use, had left T.S. with strangers in a homeless encampment, and had failed to supervise father's visits as required by the court's visitation order. T.S. was detained pursuant to an emergency protective custody order and placed with maternal cousin D.H. pending further proceedings.

Mother told the social worker preparing the detention report that she might have Native American ancestry on her father's side, but she did not know the tribe and had been unable to obtain information because her father was deceased. At the detention hearing on July 7, 2022, the juvenile court explained the ICWA, and parents told the juvenile court that they did not have Native American heritage. ICWA-020 forms indicating the absence of Native American ancestry were filed soon thereafter. T.S. was formally detained, and there was no opposition to his continued placement with D.H.

In August 2022, mother waived reunification services. In October 2022, the juvenile court accepted father's waiver of reunification services.

The Agency's February 2023 selection and implementation report under section 366.26 recommended a plan of permanent guardianship with D.H., who had been

T.S.'s principal caregiver since his birth, save for during the seven months he spent in mother's custody. Both parents received weekly supervised visits, but it was reported that mother often failed to attend, instead randomly calling or using video calls. According to the report, "The child is noted to smile and greet his parents as 'mommy' and 'daddy,' then he runs off to play and does not really interact with them. [T.S.] does not follow his parents' instructions, but rather yells 'no' and runs off." T.S. lived with D.H. (whom he also called " 'mommy' ") and her nine-year-old daughter with whom he was close. D.H. was committed to providing T.S. permanency, including possible adoption. But in light of T.S.'s ongoing relationship with his parents, D.H. had elected for legal guardianship at that time.

In the context of this information, the Agency recommended that the juvenile court find that the beneficial parental relationship exception to adoption applied and appoint D.H. as T.S.'s legal guardian with supervised visitation for parents. The juvenile court made these findings, and the guardianship was approved at the February 2023 selection and implementation hearing. The dependency case was dismissed after the letters of guardianship were issued later that month. The juvenile court retained jurisdiction over the guardianship. (*In re Heraclio A.* (1996) 42 Cal.App.4th 569, 574.)

On April 25, 2023, D.H. filed a section 388 petition asking to change the guardianship to an order allowing her to adopt T.S. Father supported the adoption, but D.H. did not know mother's position. The petition asserted that mother had seen T.S. only twice since the guardianship was established. D.H. also believed that adoption would promote T.S.'s well-being and would not inhibit his ability to have a relationship with his biological parents, because D.H. was committed to allowing them in his life. The clerk served a copy of the section 388 petition on the parties' previously appointed counsel, including the public defender's office, which had represented mother. T.S.'s attorney filed a response supporting the section 388 petition.

4

The juvenile court set the petition for a hearing on May 25, 2023. Notice of the hearing was served on the parties' previously appointed counsel, again including the public defender's office. At some point prior to the hearing, mother spoke with her previously appointed counsel from the public defender's office about D.H.'s petition and relayed that she wished to oppose it.

Mother attended the May 25, 2023, hearing. Her previous counsel from the public defender's office appeared as well, and the juvenile court reappointed her to represent mother. Counsel informed the juvenile court that mother had not received notice of the hearing and had learned of it only "by happenstance." Counsel stated that mother objected to the setting of a hearing under section 366.26 and opposed D.H.'s request to adopt T.S.

The Agency supported D.H.'s petition and asked that the case be reopened so that it could be sent to the Agency's adoptions unit and a section 366.26 hearing could be set. Father supported the petition.

At a later point in the hearing, counsel for the Agency said: "I'm not asking to reinstate dependency. This is a very strange situation. . . . [¶] . . . [¶] . . . I don't believe there is a need for the [Agency] to be involved with this family. This is simply for a request for adoption now. And I still think we need to go out, just to make sure we do it the correct way if we terminate parental rights, so maybe the [c]ourt can just set the .26 and continue the 388 until that day? I don't believe we need [c]ourt intervention."

The juvenile court agreed that approach was "appropriate" and set a section 366.26 hearing for August 30, 2023, with the section 388 petition trailing. The court then said: "Parents are ordered present on the 30th of August at 1:30."

The Agency filed its report on August 22, 2023. It recommended terminating parental rights and freeing T.S. for adoption. The report noted the date and time of the upcoming hearing (August 30) on the first page. The report was served by first-class mail on mother individually and on the public defender's office.

5

The report stated that mother was inconsistent with her weekly visits since the reinstitution of the dependency case in July 2022. It was reported that mother had seen T.S. only once since the guardianship was granted in February 2023, joining the end of a family dinner with D.H., father, and T.S. D.H. reported that "mother randomly comes to her house in the middle of the night and rings the doorbell, likely with intent to see [T.S.]" and that mother left "random items at the home's entrance." D.H. "acknowledged that [T.S.] knew his parents and wanted to keep their connection intact." D.H. originally hoped parents would continue their services so that they could ultimately reunite, but parents ceased services following the guardianship, leading D.H. to decide that adoption would better serve T.S. The report noted that T.S. was "very bonded" to D.H., looked to her for his needs, and referred to her as "mom." D.H. cared for T.S. during the prior dependency, continued contact after that dependency's termination, and was committed to providing a stable, loving home for him. The report concluded: "After weighing the benefits to the child in receiving a permanent adoptive home against any detriment to the child resulting from the termination of the parental relationship, the loss of the parental relationship does not outweigh the security and stability a new home provides." It does not appear that the Agency interviewed mother when preparing this report.

Father appeared as ordered for the August 30 hearing, but mother did not. Mother's appointed counsel was not present, but another attorney from the public defender's office attended. "[B]ased on [appointed counsel's] notes," the attorney asked that the matter be set for a contested hearing or "for a one-week continuance so she can be present." Counsel for D.H. and T.S. objected. The juvenile court rejected the attorney's request, stating that mother had attended the hearing on May 25, 2023, and was ordered to appear on August 30. The court therefore proceeded "over her objection."

The juvenile court adopted the Agency's proposed findings and orders, finding no exception to adoption applied, terminating parents' rights, and freeing T.S. for adoption.

6

The court deemed the section 388 petition moot. It does not appear that the juvenile court made any ICWA findings during these proceedings.

On the same day that mother filed her notice of appeal, D.H. completed an ICWA-020 form indicating that the family did not have Native American heritage. The form was filed in the juvenile court a few weeks later.

DISCUSSION

I.

Mother first contends that she did not receive adequate notice of the August 30 hearing at which her parental rights were terminated, in violation of her right to due process and the requirements of section 294.

Under the Constitution's due process guarantee, parents are entitled to notice of dependency proceedings affecting their interest in the custody of their children. (*In re Anna M.* (1997) 54 Cal.App.4th 463.) Due process " 'requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." ' " (*Id.* at p. 468.)

Section 294 prescribes various methods by which child welfare agencies and juvenile courts must notify parents of a selection and implementation hearing held under section 366.26. As relevant here, section 294, subdivision (f)(1) provides that, if "the parent is present at the hearing at which the court schedules a hearing pursuant to Section 366.26, the court shall advise the parent of the date, time, and place of the proceedings, their right to counsel, the nature of the proceedings, and the requirement that at the proceedings the court shall select and implement a plan of adoption, legal guardianship, placement with a fit and willing relative, or another planned permanent living arrangement, as appropriate, for the child. The court shall direct the parent to appear for the proceedings and then direct that the parent be notified thereafter only by first-class mail to the parent's usual place of residence or business, or by electronic service pursuant to Section 212.5."

7

Mother asserts that her due process rights were violated because she was not informed that the juvenile court would consider terminating her parental rights at the August 30 hearing and because she did not receive a mailed notice of the hearing as required under section 294. As an initial matter, we note that mother has forfeited these claims because her counsel failed to raise an objection based on lack of notice at the August 30 hearing. (*In re Z.S.* (2015) 235 Cal.App.4th 754, 771, disapproved on other grounds in *In re A.R.* (2021) 11 Cal.5th 234, 251, fn. 2.) In any event, we reject mother's challenge on the merits because the record establishes that she had actual notice of the date and time of the August 30 hearing and what was at stake at that hearing.

As noted above, mother was present for the May 25 hearing at which the parties and juvenile court addressed D.H.'s request to change her guardianship to adoption. At that hearing and on the record, the juvenile court set the section 366.26 hearing for August 30, and it ordered mother and father to appear.

Mother argues that it was not clear that the juvenile court would consider terminating her parental rights at the August 30 hearing, but the record demonstrates otherwise. At the May 25 hearing, the juvenile court and the parties discussed D.H.'s request to adopt T.S. and the fact that a hearing under section 366.26 would be necessary before the court could entertain that request. Mother's counsel stated her client's opposition to adoption and her objection to setting a hearing under section 366.26. T.S.'s counsel noted that mother could offer any arguments for a legal exception to adoption at the section 366.26 hearing. These discussions all made clear that the August 30 hearing would address the possible termination of parental rights.

We recognize that mother may not have understood the repeated references to ".26," but she was represented by counsel at the hearing, and counsel herself used that shorthand to refer to the upcoming hearing at which the issue of parental rights and D.H.'s adoption request would be addressed. In addition, both mother and her counsel were served with the Agency's report filed on August 22, which stated on the first page

8

the date and time of the section 366.26 hearing as well as the Agency's "recommend[ation] that the parental rights of the mother, [P.M.], and the biological father . . . be terminated to free the minor, [T.S.], for adoption." On this record, we conclude that mother was adequately apprised that the juvenile court would consider terminating her parental rights at the August 30 hearing.

These facts distinguish this case from *In re Anna M.*, *supra*, 54 Cal.App.4th 463, on which mother relies. In *Anna M.*, when the juvenile court set the section 366.26 hearing, the social services agency was recommending a legal guardianship, and the juvenile court orally indicated to the mother and other parties that it would likely agree with that recommendation. (*Anna M.*, at pp. 465-466.) On the day of the scheduled section 366.26 hearing, the agency filed a new report recommending that the mother's parental rights be terminated and the children placed for adoption. (*Anna M.*, at p. 467.) Under those circumstances, the Court of Appeal concluded that the juvenile court's oral advisements did not adequately notify the mother "of what was truly at stake in the section 366.26 hearing." (*Id.* at p. 468.) In contrast here, the central focus of the May 25 hearing was setting a section 366.26 hearing that would address the possible termination of parental rights in light of D.H.'s desire to adopt T.S. Thus, unlike in *Anna M.*, mother here had actual notice that her parental rights were at stake at the section 366.26 hearing. There was accordingly no violation of her right to due process. (See, e.g., *In re Phillip F.* (2000) 78 Cal.App.4th 250, 258-259 [actual notice of a continued § 366.26 hearing satisfies due process].)

As for mother's statutory claim, she is correct that the juvenile court's failure to direct the Agency to send a written notice of the hearing did not fully satisfy the requirements of section 294, subdivision (f)(1). At the May 25 hearing, the juvenile court advised parents of the August 30 hearing and ordered them to appear. But we see no evidence in the record that it directed parents to be notified by first-class mail thereafter, as the statute requires. (§ 294, subd. (f)(1).) This defective procedure, however, provides

9

no ground for reversal because it did not prejudice mother.  As we have explained, mother had actual notice of the date, time, and nature of the August 30 hearing.  The August 30 hearing was discussed in mother's presence at the May 25 hearing; and the Agency's report, which was served on mother personally as well as on her counsel, confirmed that the August 30 hearing would address the possible termination of her parental rights.  We therefore see no reasonable probability that an additional mailed notice would have made a difference in ensuring that mother was notified of the hearing.  (See, e.g., *In re Jesusa V.* (2004) 32 Cal.4th 588, 625 [applying harmless error test under *People v. Watson* (1956) 46 Cal.2d 818, 836 to prisoner's statutory right to attend adjudication of dependency petition]; *In re J.P.* (2017) 15 Cal.App.5th 789, 797 [applying *Watson* harmless error to denial of parent's statutory right to counsel].)

II.

Mother next contends that the juvenile court abused its discretion in refusing to set a contested hearing and declining to grant a one-week continuance.

Mother's first assertion lacks merit because the juvenile court did provide mother with a contested section 366.26 hearing—the hearing on August 30.  As explained above, the juvenile court set that hearing for the purpose of considering the termination of parental rights in light of D.H.'s request to adopt T.S.  As T.S.'s counsel observed at the May 25 hearing, the August 30 hearing would be mother's opportunity to argue for any exceptions to adoption.  The juvenile court was not required to set a *new* contested hearing when mother did not appear on August 30.

The juvenile court also did not abuse its discretion in declining to continue the August 30 hearing.  Section 352, subdivision (a)(1) provides that a juvenile court may continue a hearing if it is not "contrary to the interest of the minor."  "In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements."  (*Ibid.*)  A

10

continuance may be "granted only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance." (§ 352, subd. (a)(2).) "In order to obtain a motion for a continuance of the hearing, written notice shall be filed at least two court days prior to the date set for hearing, together with affidavits or declarations detailing specific facts showing that a continuance is necessary, unless the court for good cause entertains an oral motion for continuance." (§ 352, subd. (a)(3).)

" 'When a parent is absent without good cause at a properly noticed hearing,' . . . 'the court is entitled to proceed in the parent's absence.' [Citation.] Ordinarily, a parent's failure to appear will not constitute the good cause necessary to justify a continuance because substantial importance is attached to the child's need to promptly resolve the dependency matter. [Citation.] Thus, '[a]n unjustified failure to appear at a duly noticed hearing reflects a parent's choice not to attend,' and the juvenile court 'may properly treat this choice as a waiver of the right to be present at that hearing and of the benefits of being present.' " (*In re A.V.* (2021) 73 Cal.App.5th 949, 957, italics omitted.)

We review a juvenile court's refusal to grant a continuance for an abuse of discretion. (*In re B.C.* (2011) 192 Cal.App.4th 129, 143-144.) We " 'consider all the evidence, draw all reasonable inferences, and resolve all evidentiary conflicts, in a light most favorable to the trial court's ruling.' " (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)

We discern no abuse of discretion in the juvenile court's refusal to continue the hearing, because mother failed to identify any good cause for her request. Mother's attorney asked for the postponement "so she can be present," but the attorney did not offer any explanation for why mother had not appeared as ordered. Mother notes that the attorney appearing on her behalf was not her regularly appointed counsel. But both lawyers worked in the same law office (the public defender's office), and the record indicates that the attorney who was present at the August 30 hearing had appointed

11

counsel's case notes.  The record also contains no evidence that the attorney was unable to act on mother's behalf at the hearing.

That is unlike the situation in *In re Julian L.* (1998) 67 Cal.App.4th 204, which mother cites.  In that case, the mother's attorney, who was appointed one week before the section 366.26 hearing, stated that he had been unable to speak to his client and ascertain her wishes.  (*Julian L.*, at p. 207.)  In contrast here, the public defender's office had long represented mother, and the record demonstrates that mother had previously communicated her position to counsel.

III.

Mother's final contention is that the juvenile court failed to assure compliance with the ICWA.  On this point, we conclude that conditional reversal is required.

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings."  (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.)  The ICWA defines an " 'Indian child' " as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  (25 U.S.C. § 1903(4).)

Child welfare agencies and juvenile courts "have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies by inquiring whether a child is or may be an Indian child.  (§ 224.2, subd. (a).)  This 'duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child.' "  (*In re Dezi C.* (Aug. 19, 2024, S275578) ___ Cal.5th ___ [p. 12].)  "When the agency has 'reason to believe' that an Indian child is involved, further inquiry regarding the possible Indian status of the child is required.  (§ 224.2, subd. (e); see also [Cal. Rules of Court,] rule 5.481(a)(4).)"  (*Id.* at p. ___ [pp. 13-14], fn. omitted.)  "If the

12

inquiry establishes a reason to know an Indian child is involved, notice must be provided to the pertinent tribes.  (§ 224.3, subds. (a), (b); 25 U.S.C. § 1912(a).)"  (*Id.* at p. ___ [p. 15].)

A juvenile court's finding that the ICWA does not apply is " 'subject to reversal based on sufficiency of the evidence.' "  (§ 224.2, subd. (i)(2).)  Its "fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review."  (*In re Dezi C.*, *supra*, ___ Cal.5th at p.___ [p. 27].)  " 'On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case.  However, the less developed the record, the more limited that discretion necessarily becomes.' "  (*In re Kenneth D.* (Aug. 19, 2024, S276649) ___ Cal.5th ___ [p. 13].)

A juvenile court must make a finding whether the ICWA applies.  (*H.A. v. Superior Court* (2024) 101 Cal.App.5th 956, 965-966; *In re E.W.* (2009) 170 Cal.App.4th 396, 403.)  Here, the record discloses no express finding concerning the ICWA's applicability.  The Agency urges us to imply a finding, but we see no basis in the record on which to do so.  Except for when the juvenile court explained the ICWA to parents and provided them with ICWA-020 forms at the two detention hearings, the court did not discuss or consider the ICWA's applicability.  We thus cannot be "confident that the juvenile court considered the issue."  (*E.W.*, at p. 405.)

On remand, the juvenile court must make a finding whether the ICWA applies after satisfying itself that the Agency has conducted the required inquiry.  In this case, mother stated in 2018 and 2022 that she believed she had Native American ancestry on her father's side of the family.  Yet the record suggests that the Agency did not question mother's known paternal relatives or mother's stepmother with whom it was in contact.  Mother's statements of possible Native American heritage were sufficient to require the Agency to follow up.  (See *In re D. F.* (2020) 55 Cal.App.5th 558, 568-569; see generally

13

*In re Dezi C.*, *supra*, ___ Cal.5th ___ [p. 27] [" 'operative concept is those people who are reasonably available to help the agency with its investigation into whether the child has any potential Indian ancestry should be asked' "].) We remand for the juvenile court to make an ICWA finding after discharging its obligation to assure that the required inquiry into T.S.'s possible Native American heritage has occurred.

DISPOSITION

The orders terminating parental rights are conditionally reversed and the matter is remanded for the limited purpose of complying with the inquiry and notice provisions of the ICWA, as well as the requirements of sections 224.2 and 224.3 and the documentation provisions of California Rules of Court, rule 5.481(a)(5). If the juvenile court thereafter finds a further inquiry was proper and adequate, due diligence has been conducted, and concludes the ICWA does not apply, the orders shall be reinstated. If, however, the juvenile court concludes that the ICWA applies, the juvenile court is ordered to conduct a new section 366.26 hearing and proceed in accordance with the ICWA and California implementing provisions.


/s/_____
FEINBERG, J.



We concur:



/s/_____
HULL, Acting P. J.



/s/_____
KRAUSE, J.

14