Filed 2/10/21  In re A.H. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re A.H. et al., Persons Coming Under the Juvenile Court Law. | C091688 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES, | (Super. Ct. Nos. JD239737, JD239738) |
| Plaintiff and Respondent, | |
| v. | |
| M.H., | |
| Defendant and Appellant. | |

M.H., mother of the minors (mother), appeals from the juvenile court's order terminating her parental rights and freeing the minors for adoption.  (Welf. & Inst. Code,

§§ 366.26, 395.)[1]  Mother challenges the juvenile court's finding that the minors were adoptable.  We will affirm the juvenile court's order.

BACKGROUND

On March 20, 2019, the Sacramento County Department of Child, Family, and Adult Services (the Department) filed dependency petitions on behalf of minors A.H. (who was one year old at the time) and J.S. (who was three years old) pursuant to section 300, subdivisions (b), (g), and (j).  Under subdivision (b), the petitions alleged failure to protect due to mother leaving the minors with an inappropriate caretaker for approximately three months, and leaving the minors in a stolen vehicle with no car seats and in reach of a handgun (later determined to be a fake gun), ammunition, methamphetamine, and marijuana.  Under subdivision (g), the petitions alleged mother was detained in the county jail on March 18, 2019, and left the minors without provisions for care and support during her incarceration.  Under subdivision (j), the petitions alleged mother's parental rights over three of the minors' half-siblings were previously terminated after mother failed to reunify with those children.  The minors were temporarily detained and placed with a foster caregiver.

The Department reported that the minors were doing well in their foster placement.  The foster mother asked whether J.S. might have autism, noting he began screaming when the music came on in the car and continued to do so until it was turned off, and that he was not toilet trained despite being three years old.  The foster mother also reported that both minors were good children but noted that J.S. had pushed the other children in her home and would scream if his needs were not met.  He also screamed when placed in a toddler bed but slept through the night when placed in a crib.  Neither of the minors knew how to drink from an open cup and had to use sippy cups instead.  The

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

social worker informed the foster mother that it was suspected J.S. was a high-functioning child with autism. When the social worker met the foster mother and the minors, she noted the minors appeared not to have the "stranger danger" fear most children had at their age.

On March 21, 2019, the juvenile court ordered the minors detained in out-of-home placement. The juvenile court also ordered reunification services and supervised visitation for the parents.

The April 2019 jurisdiction/disposition report stated mother denied the allegations in the petitions, claimed she only left the minors with the maternal aunt for three weeks in November 2018, and denied having a current substance abuse problem, stating she had been clean and sober for three years. The social worker reported visiting the minors in their foster placement. A.H. continually followed J.S. around and pushed him as J.S. cried. While A.H. did not respond to the foster mother's coaching, J.S. was comforted by the foster mother and stopped crying and screaming. The social worker noted that J.S. appeared to be developmentally delayed; he screamed, cried, and made sounds but was unable to communicate with words.

The foster mother reported that A.H. pushed J.S. and other children at day care for no apparent reason, appeared afraid of water at bath time, and took food from other children in the home. The foster mother also reported that J.S. appeared to be afraid of water at bath time; regularly screamed, cried, hit himself in the face, and hit his face on doors and walls; did not use utensils to eat food but rather put his face in the food; took food from other children in the home; and was not toilet trained.

The Department reported its unsuccessful attempts to set up visitation due to an inability to contact mother. The Department recommended that the minors remain in out-of-home placement and that providing mother with reunification services would be in the minors' best interests despite the applicability of the bypass provision set forth in

3

section 361.5, subdivision (b)(11) due to the termination of her parental rights as to the minors' half-siblings.

The first addendum report filed May 22, 2019 provided updates on the status of the minors, including the concern that A.H. only spoke in "baby talk," was still taking a bottle, and was imitating the behaviors of his older brother, J.S. An assessment of A.H. revealed developmental concerns. There was also concern that J.S. had not received any services to address autism, had not started toilet training, and did not cooperate during a developmental screening.

The second addendum report filed June 18, 2019 provided additional updates, including that A.H. qualified for early intervention services due to his developmental delays in communication and socio-emotional development. A supervised visit between mother and the minors occurred on June 8, 2019, during which both minors paid little attention to mother. J.S. showed no emotion toward her, and A.H. at times ran up to mother, hit her, and then ran away when she attempted to redirect his behavior. But at the end of the visit, J.S. seemed agitated by the foster mother and hit her. No further visits were scheduled because mother did not know her work schedule.

The Department recommended that the juvenile court bypass mother for reunification services pursuant to section 361.5, subdivision (b)(11) due to the previous termination of her parental rights over the minors' three half-siblings, the fact that she had not made an effort to treat the problems that led to the removal of those children and the termination of her parental rights, and the likelihood of reunifying was low.

The third addendum report, filed July 30, 2019, stated the minors continued to reside with the same foster family. J.S. reportedly had a "meltdown" during a birthday party for A.H. and could not be calmed down. The foster mother reportedly remained patient and loving toward J.S. as he was acting out. J.S. was nonverbal and had delays in communication skills and socio-emotional development. Through Alta Regional Center, the foster mother was receiving parenting classes, A.H. was receiving speech services

4

and therapy, and J.S. was to receive services after completing an assessment. The foster mother reported the minors were acclimating to the home. They now loved bath time, and they were both in the same daycare/preschool which they also loved. She noted the minors had some emotional behaviors after visiting with mother but were otherwise doing well.

On September 10, 2019, the Department filed first amended petitions on behalf of the minors adding an allegation that mother had an untreated substance abuse problem from which she failed and/or refused to rehabilitate.

On September 19, 2019, the juvenile court modified and sustained the allegations in the amended petitions, striking the subdivision (g) allegations that mother had been detained in county jail and left the minors without provisions for care and support. The juvenile court adjudged the minors to be dependents of the juvenile court, bypassed mother for reunification services pursuant to section 361.5, subdivision (b)(11), ordered continued out-of-home placement for the minors, and set the matter for a section 366.26 hearing.

The selection and implementation report filed January 16, 2020, reported that mother failed to maintain visitation with the minors, her most recent visit having been in July 2019. The minors had been placed with their current caretakers (their second placement) since November 1, 2019. An assessment of A.H. revealed he did not appear to be developmentally on target. He was receiving early intervention services through Alta Regional Center and, according to his individualized family service plan, he was delayed in speech, cognitive skills, communication, social/emotional skills, and adaptive self-care. But he was reported to be a very happy and energetic child, enjoying people and attached to his caretakers.

An assessment of J.S. revealed he also did not appear to be developmentally on target and, while he was able to feed himself, he was unable to dress himself without assistance. His verbal skills were minimal and he did not speak in complete sentences.

5

J.S. was also receiving services through Alta Regional Center. Tests indicated J.S. was on the autism spectrum and also had an intellectual disorder. He reportedly struggled with appropriate emotional and behavioral expressions and would hit and kick people when he became frustrated. However, since being placed in his current home, those behaviors were decreasing and his verbal skills were increasing.

The minors' current caretakers completed their resource family approval on October 31, 2019, which included screening for any child abuse or criminal history. The minors were reportedly thriving in their new placement and the caretakers expressed their desire to pursue adoption of both children.

The Department assessed the minors as specifically adoptable. It was noted that A.H. was receiving early intervention services for delays in speech, cognitive skills, communication, social/emotional skills, and adaptive self-care; J.S. was diagnosed as being on the autism spectrum and having developmental delays; and the minors were a sibling set. The minors were reportedly developing a strong and supportive relationship with their current caretakers, to whom they looked to meet their daily physical and emotional needs. The Department recommended that the juvenile court terminate parental rights and free the minors for adoption.

The parents did not appear for the section 366.26 hearing on January 16, 2020. The juvenile court denied counsel's request for a continuance, adopted the recommended findings and orders in the selection and implementation report (including that the minors were likely to be adopted), terminated mother's parental rights, and identified adoption as the appropriate permanent plan.

## DISCUSSION

Mother contends there was insufficient evidence to support the juvenile court's finding of adoptability. She claims the Department failed to demonstrate that the minors were generally adoptable, arguing the minors' first foster placement failed after seven and a half months and the minors had only spent 10 weeks in their second foster

6

placement when the juvenile court found them adoptable and terminated parental rights. She further claims that the minors were a sibling group that exhibited "highly troubling behaviors . . . and extensive developmental, emotional and intellectual delays," and J.S. had been diagnosed as being on the autism spectrum.

A

To terminate parental rights, "the [juvenile] court must find by clear and convincing evidence that it is likely that the child will be adopted." (*In re Asia L.* (2003) 107 Cal.App.4th 498, 509; see also § 366.26, subd. (c)(1).) There must be "convincing evidence of the likelihood that adoption will take place within a reasonable time." (*In re Brian P.* (2002) 99 Cal.App.4th 616, 624.)

The issue of adoptability "focuses on the minor, e.g., whether the minor's age, physical condition, and emotional state make it difficult to find a person willing to adopt the minor. [Citations.] Hence, it is not necessary that the minor already be in a potential adoptive home or that there be a proposed adoptive parent 'waiting in the wings.' " (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649, italics omitted.) But, " 'the fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other matters relating to the child are not likely to dissuade individuals from adopting the minor. In other words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent or by some other family.' [Citation.]" (*In re Lukas B.* (2000) 79 Cal.App.4th 1145, 1154, italics omitted; accord, *In re J.I.* (2003) 108 Cal.App.4th 903, 911, overruled on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7; *In re Sarah M.*, at pp. 1649-1650.)

In reviewing the juvenile court's finding for substantial evidence, we give it the benefit of every reasonable inference and resolve any evidentiary conflicts in favor of affirming. (*In re I.I.* (2008) 168 Cal.App.4th 857, 869.) That is, we must determine

7

whether the record contains substantial evidence from which the court could find clear and convincing evidence that each child was likely to be adopted within a reasonable time. (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1232.) If so, "[i]t is irrelevant that there may be evidence which would support a contrary conclusion." (*In re K.B.* (2009) 173 Cal.App.4th 1275, 1292.)

B

To the extent mother is claiming the applicability of the sibling relationship exception to adoption, she has forfeited that claim by failing to assert it in the juvenile court. (*In re Daisy D.* (2006) 144 Cal.App.4th 287, 291-292; *In re Erik P.* (2002) 104 Cal.App.4th 395, 403; *In re Christopher B.* (1996) 43 Cal.App.4th 551, 558; *In re Dakota S.* (2000) 85 Cal.App.4th 494, 501-502.) In addition, the Department argues that, to the extent mother is challenging the sufficiency of the adoptability assessment report, she failed to raise the issue in the juvenile court and has therefore forfeited her right to raise the issue on appeal. We agree. " ' "An appellate court will ordinarily not consider procedural defects or erroneous rulings in connection with relief sought or defenses asserted, where an objection could have been, but was not, presented to the lower court by some appropriate method." [Citation.]' [Citation.]" (*In re G.C.* (2013) 216 Cal.App.4th 1391, 1398-1399.) "This is the general rule, because any other rule would allow a party to deliberately stand by in silence and permit the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable. [Citations.] The forfeiture doctrine has been applied in dependency proceedings in a wide variety of contexts, including cases involving failures to obtain various statutorily required reports [citations]." (*Ibid.*) As relevant here, "failure to object to the admission of improper or inadequate evidence waives the right to raise the issue on appeal. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 307, p. 317.)" (*In re Crystal J.* (1993) 12 Cal.App.4th 407, 411; accord *In re Aaron B.* (1996) 46 Cal.App.4th 843, 846; *In re Urayna L.* (1999) 75 Cal.App.4th 883, 886.)

8

Mother challenges the propriety and adequacy of the section 366.26 assessment report, claiming among other things that the report included conflicting statements and conclusions about the minors' adjustment to their new foster placement, their developmental and emotional progress, and the nature and extent of the minors' relationship with their prospective adoptive foster parents, and that the juvenile court required more evidence as to whether the minors' second foster placement would in fact lead to an adoption. However, to the extent mother is challenging the sufficiency of the report, she forfeited that claim on appeal for failure to object on that basis in the juvenile court.

Nevertheless, "while a parent may waive the objection that an adoption assessment does not comply with the requirements provided in section 366.21, subdivision (i), a claim that there was insufficient evidence of the child's adoptability at a contested hearing is not waived by failure to argue the issue in the juvenile court." (*In re Brian P., supra*, 99 Cal.App.4th at p. 623; accord *In re Erik P., supra*, 104 Cal.App.4th 395, 399-400.) Mother claims the juvenile court's adoptability finding was not supported by substantial evidence because the evidence demonstrated otherwise.

It became clear that J.S. was on the autism spectrum, was not toilet trained, had difficulty communicating, and had negative behavioral issues including screaming, crying, hitting himself and others, and not using utensils to eat or a cup to drink. He appeared to be developmentally delayed. A.H. exhibited delays in communication, problem solving, and socio-emotional development. Both children were afraid of water at bath time and took food from other children, and both lacked the "stranger danger" fear most children had at their age.

Despite those challenges, however, the minors were gradually making progress in their two foster placements over the course of the proceedings. For example, in July 2019, both minors and the foster mother were receiving services through Alta Regional Center. The foster mother reported that the minors were acclimating to their

9

foster home and had begun to love bath time and their preschool. As of January 2020, A.H. was receiving early intervention services and meeting emotional milestones appropriate for a two-year-old child. A.H. was also interacting with people and becoming attached to his new caretakers.

J.S. was receiving early intervention services as well and while he too was not developmentally on target and continued to struggle with certain behaviors, those behaviors were decreasing and his verbal skills were increasing. The Department reported that the minors were both developing a strong and supportive relationship with their current caretakers, who wanted to adopt both children and to whom they looked to meet their daily physical and emotional needs. For those reasons, the Department assessed the minors as specifically adoptable.

The fact that the caretakers expressed their desire to adopt both children demonstrated that the issues the minors were experiencing would not likely to deter the caretakers from adopting them. (*In re Lukas B., supra,* 79 Cal.App.4th at p. 1154.) Although mother argues the minors had only lived with their current caretakers for 10 weeks, the evidence shows that the minors were "likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family*." (*In re Sarah M., supra*, 22 Cal.App.4th at p. 1650, original italics.)

Mother further argues that the juvenile court should have selected a permanent plan of legal guardianship or long-term foster care. But where, as here, the juvenile court finds the minors adoptable and no exceptions apply, "it is presumed, even in the absence of a specific finding by the court, that adoption is the choice that is in the child's best interests" and " 'the less desirable and less permanent alternatives of guardianship and long-term foster care need not be pursued.' [Citation.]" (*In re Jose V.* (1996) 50 Cal.App.4th 1792, 1799.)

The juvenile court's adoptability finding is supported by sufficient evidence.

DISPOSITION

The juvenile court's order is affirmed.

/S/
MAURO, J.

We concur:

/S/
RAYE, P. J.

/S/
DUARTE, J.